**Howard M. WERNER, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**Frank ALESI and Robert Smith, Third-Party Defendants.**

**Civ. No. 14783.**

United States District Court, D. Connecticut.

April 17, 1974.

---

Howard M. Werner, West Hartford, Conn., for plaintiff.

Daniel Dinan, Asst. Chief, Refund Trial Section #1, Tax Div., Dept of Justice, Washington, D. C., Stewart H. Jones, U. S. Atty., Henry S. Cohn, Asst. U. S. Atty., Hartford, Conn., for United States.

Joseph Neiman, Newington, Conn., for Robert Smith.

James J. Gadarowski, Newington, Conn., for Frank Alesi.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

The United States assessed plaintiff for a 100% civil penalty in lieu of federal income taxes withheld from the wages of employees of Hugo's Continental Restaurant, Inc. (Hugo's), but never paid to the United States. The basis of the assessment is 26 U.S.C. § 6672, which makes liable to a 100% civil penalty "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or de-

feat any such tax or the payment thereof . . . ." Since plaintiff contends he is not a person subject to such liability within the meaning of § 6672, he paid $100 of the total assessment of $11,975.50 and has brought this action for a refund.[1] The United States has counterclaimed for the balance of the assessment, the amount of which is not in dispute. The United States has also filed third party complaints against three other persons who it contends are jointly and severally liable for portions of Hugo's tax arrears and hence are subject to penalty assessments under § 6672. The United States has obtained a default judgment against one of these third party defendants, Ugo Bua, and seeks judgments against the other two third party defendants, Frank Alesi and Robert Smith. The Court has jurisdiction over the entire action under 28 U. S.C. §§ 1340 and 1346(a)(1).

### Burden of Proof

"The two elements necessary to make § 6672 applicable to a taxpayer are: (1) the individual person had the authority to direct or control the payment of corporate funds and (2) such a responsible person willfully failed to comply with the tax withholding statutes." Stake v. United States, 347 F. Supp. 823, 826 (D.Minn.1972). It is well established that in an action for a refund of a penalty assessment under § 6672, the taxpayer has the burden of proving by a preponderance of the evidence "that he was not a person whose duty it was to pay over withholding and social security taxes or that he did not willfully fail to comply with that duty." Melillo v. United States, 244 F.Supp. 323, 326 (E.D.N.Y.1965). See Lawrence v. United States, 299 F.Supp. 187 (N.D. Tex.1969). Plaintiff bears this burden of proof both on his claim for a refund and on the Government's counterclaim

---

1. The "full payment" rule of Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed. 1165 (1958), aff'd on reh'g, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), is inapplicable to assessments of civil penalties under

§ 6672. Psaty v. United States, 442 F.2d 1154, 1159 (3d Cir. 1971); Steele v. United States, 280 F.2d 89, 90–91 (8th Cir. 1960). *See also* Irving v. Gray, 479 F.2d 20, 24–25, n. 6 (2d Cir. 1973).

for the balance still outstanding on the penalty assessment, providing only that the Government offers into evidence the certification of its assessment against plaintiff. Psaty v. United States, 442 F.2d 1154, 1158–1160 (3d Cir. 1971). The certification of assessments against them also places the burden of proof on the third party defendants. Lesser v. United States, 368 F.2d 306, 310 (2d Cir. 1966); Melillo v. United States, *supra*. In the instant case, the Government put in evidence certifications of assessments against plaintiff and against both of the remaining third party defendants, Alesi and Smith.

### Findings of Fact

Viewed from this perspective, the conflicting evidence adduced at trial established the following: plaintiff and two others, Messrs. Kerin and Kaplan, acting as joint venturers provided financial backing for Ugo Bua's purchase of 75 per cent of the stock in Hugo's, which was formerly known as Camelot, Inc. Since the holder of 25 per cent of the stock in Camelot, Inc. has apparently disappeared, the 75 per cent of the Camelot, Inc. stock purchased by Bua conferred total control over the acquired corporation, *i. e.*, Hugo's, and was treated by Bua and plaintiff as all of the outstanding stock in the corporation. The joint venturers, informally known as KKW, provided operating funds for Hugo's by endorsing Hugo's notes to two banks totalling over $27,000. KKW also provided Bua personally with funds for his purchase of the business, secured by a mortgage (subsequently foreclosed) on Bua's home. In return for KKW's backing, Bua gave KKW an option to acquire 51 per cent of his stock in Hugo's for $1,000 at any time within two years from Bua's purchase of Hugo's in March 1967.

At the time Bua acquired Hugo's the restaurant had over $29,000 in outstanding liabilities. Despite KKW's optimism about Bua's ability to make the restaurant a success, it continued to operate at a loss. Beginning in May 1967, plaintiff began to involve himself actively in the affairs of Hugo's. Third party defendants Alesi and Smith were brought into the business as entertainers at plaintiff's instigation. As the summer progressed plaintiff became more and more involved in the day-to-day management of Hugo's. Plaintiff's office was near Hugo's, and he would stop in at Hugo's almost every day after work to discuss the business with Bua and to advise Bua on its conduct. Plaintiff had Alesi and Smith assume assistant managerial roles together with Bua and himself in the conduct of the business.

Plaintiff directed an audit to be conducted of Hugo's books in November 1967, in order to determine precisely the financial condition of Hugo's as of October 31, 1967. The audit revealed that Hugo's was still deeply in debt, and at a meeting to discuss the audit on about November 20, 1967, plaintiff expressed exasperation at the continued drain imposed by Hugo's on the resources of KKW, which apparently had been extending additional credit to Hugo's from time to time since its initial backing of Bua in his acquisition of Hugo's. At plaintiff's direction in the course of this meeting to discuss the audit, the management of Hugo's was reorganized to increase Smith's responsibilities and to decrease Bua's, including Bua's power to write checks on Hugo's account.

The audit showed that Hugo's owed over $9,000 in withholding taxes through the first ten months in 1967. Bua, an alien, was concerned lest he be deported for failure to pay these taxes. Plaintiff, ostensibly out of concern for Bua and his family, arranged for KKW on November 21, 1967 to give Hugo's about $11,500 in return for an assignment of Hugo's accounts receivable, which then totalled about $12,500. At plaintiff's direction Bua and Smith visited the local Internal Revenue Service office, where they were told that they would be contacted later regarding Hugo's back taxes. Ultimately only $1,300 of the November 21 proceeds of KKW's purchase of Hugo's accounts re-

ceivable was paid to the IRS. The balance was at plaintiff's direction applied in satisfaction of other debts, including back state taxes and liquor bills. Plaintiff was particularly concerned lest unpaid liquor bills should lead to suspension of Hugo's liquor license.

After a disastrous holiday season, Bua was excluded from a meeting of the principals of KKW at Hugo's on New Year's Eve, December 31, 1967. Bua became enraged at this treatment and ejected the principals from the premises. Thereafter Bua reassumed active management of the restaurant, and plaintiff never again entered the premises. However, KKW through plaintiff exerted pressure on Bua to repay KKW for its investment in Hugo's. This led to an agreement between Bua and KKW signed on March 15, 1968, under which Bua acknowledged a debt of $30,000 to KKW plus the value of as yet uncollected accounts receivable assigned to KKW in November 1967 and by the agreement reassigned to Hugo's. The agreement specified that it was a consolidation of all previous obligations owed by Bua to KKW. KKW agreed not to exercise its option to acquire the stock of Hugo's in consideration for Bua's entering into the agreement, and agreed to release Bua from the option at the time Bua's debt to KKW was paid off. By the terms of the contemporaneous note for $30,000, Bua was to pay KKW $200 per week toward the amount owed to KKW. Bua made several such weekly payments thereafter, before the final collapse of Hugo's.

*Persons Responsible for the Payment of Taxes*

■ The liability imposed by § 6672 is not confined to persons who are officially responsible as officers or employees for the payment of corporate taxes. "The term 'person' [as defined in § 6671 for the purposes of § 6672] does include officer and employee, but certainly it does not exclude all others. . . . [T]he section must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred. [¶] . . . The statute's purpose is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing. It would make little sense to confine liability to those performing the mere mechanical functions of collection and payment when such functions are performed simply in accordance with the executive judgment of others whose duty it is to decide for the corporation in this area." United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962). The person responsible for the payment of taxes under §§ 6671 and 6672 is the person who "had the final word as to what bills should or should not be paid, and when," Wilson v. United States, 250 F.2d 312, 316 (9th Cir. 1958), a person "so connected with a business as to be in a position to exercise full authority with respect to its financial affairs." Melillo v. United States, *supra*, 244 F.Supp. at 327.

■ Under this standard, the evidence established plaintiff as a person responsible for Hugo's payment of withholding taxes during the third and fourth quarters of 1967. Plaintiff was clearly the man in ultimate control of Hugo's during this period; as the only member of KKW actively monitoring Hugo's affairs, plaintiff had great influence over the putative owner of Hugo's, influence which plaintiff was not loath to exercise. Plaintiff's lack of any official connection (other than creditor) to Hugo's was largely illusory. KKW was possessed of an option to buy a majority interest in Hugo's at any time during this period, for a mere $1,000. Bua could have been under no misapprehension that resistance on his part to plaintiff's "advice" could easily result in his loss of formal control over Hugo's—having already sunken nearly $30,000 into Hugo's KKW could be expected readily to exercise its $1,000 option in order to protect its investment by assuming direct management of the business, so long as the business was worth saving. This

point of worthlessness had apparently been reached by the time of Bua's New Year's resolution. KKW did not thereafter exercise its option, and plaintiff refrained from further participation in the day-to-day affairs of Hugo's. With Bua intransigent and the business failing, the further investment of even the minimal option price no doubt appeared futile at that point, and KKW assumed the more passive role of a mere creditor.

■ The Court does not feel that § 6672 was intended to reach one who as a bona fide creditor, and not as the power behind a puppet corporation, importunes a failing corporation to pay off its debts. Obviously creditors can and do wield considerable power over an ailing business through the threat of draconian collection measures, but so long as creditors limit such pressure tactics to inducing payment of what is owed them, and do not seek to take effective control of the debtor in order to improve the debtor's ability to pay, then the mere fact of an obligation owed to the creditor and the creditor's forceful demand for payment, together with the creditor's capacity through threat of collection to make the debtor dance to his tune, ought not to render the creditor a person responsible for the debtor's payment of taxes within the meaning of § 6672. Only he who actually calls the tune should be held accountable to the piper. Accordingly, while it is clear that plaintiff and KKW still exercised considerable influence over Bua, insofar as Bua was induced to sign the consolidated loan agreement of March 15, 1968 and to make payments thereunder, plaintiff was by virtue of his acquiescence in Bua's managerial volte-face no longer a person responsible under § 6672 for Hugo's tax payments.

### Willfulness

■ It remains for the Court to determine the willfulness of plaintiff's failure to ensure that Hugo's paid its taxes for the last two quarters of 1967. It is sufficient evidence of willfulness for a person responsible for the payment of taxes to have "'voluntarily, consciously, and intentionally preferred other creditors of the corporation over the United States.'" Spivak v. United States, 370 F.2d 612, 615 (2d Cir. 1967), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625. Willful action under § 6672 requires merely "voluntary, conscious and intentional—as opposed to accidental—decisions not to remit funds properly withheld to the Government. [Citations omitted.] Liability does not depend upon the presence of bad motive or the specific intent to defraud the Government or deprive it of revenue." Monday v. United States, 421 F.2d 1210, 1216 (7th Cir. 1970), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48. "[T]he financial condition of the business or the demands of creditors" are not proper factors in determining the willfulness under § 6672 of a failure to pay taxes. Id. "The desire to continue in business is not justification for . . . preferring other creditors" under the expansive civil, as opposed to criminal, standard of willfulness in failing to pay taxes. Stake v. United States, supra, 347 F.Supp. at 827. Since it is evident that, from the November 1967 audit, plaintiff knew Hugo's was seriously delinquent in its payment of withholding taxes, and yet plaintiff directed the great bulk of the money paid to Hugo's by KKW for its accounts receivable to be paid to creditors other than the United States, it follows that plaintiff's failure to ensure full payment of the taxes withheld during the third and fourth quarters of 1967 was willful.

Plaintiff's complaint against the United States is dismissed. Judgment may enter for the United States on its counterclaim against plaintiff for $9,045.59, plus statutory interest thereon, that amount being the unpaid balance of the amount assessed against plaintiff for Hugo's failure to pay taxes in the third and fourth quarters of 1967. Judgment may enter dismissing the balance of the United States' counterclaim against plaintiff, i. e., $2,829.91, the amount assessed against plaintiff for Hugo's fail-

ure to pay taxes during the first and second quarters of 1968. The United States' complaints against third party defendants Alesi and Smith are dismissed, the Court finding that Alesi and Smith lacked sufficient authority within the management of Hugo's to be persons responsible for the payment of federal withholding taxes. Judgment against the United States in the amount of $601.61, without interest, may accordingly enter for third party defendant Alesi on his counterclaim against the United States for that amount, which was collected through a levy on Alesi's assets and applied against the 100% penalty assessed against Alesi.

So ordered.