Cosmo J. CATERINO,
Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 85–1703.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1986.

Decided June 4, 1986.

As Amended on Denial of Rehearing
July 15, 1986.

Gary S. Matsko with whom Davis, Malm & D'Agostine, Boston, Mass., was on brief, for plaintiff, appellant.

Murray S. Horwitz, Tax Div., Dept. of Justice, with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Wynette J. Hewett, Tax Div., Dept. of Justice, Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief, for defendant, appellee.

Before BREYER, Circuit Judge, ALDRICH and ROSENN,* Senior Circuit Judges.

ROSENN, Senior Circuit Judge.

This appeal raises the factually difficult issue of third-party liability for income and social security taxes that an employer has withheld from the wages of employees but failed to remit to the federal government. Northerlin Company, Inc., the employer, withheld approximately $500,000 for the period from January 1, 1973, through June 30, 1974, but did not transmit the money to the Government. Cosmo J. Caterino (the taxpayer), individually and as president of Graham Stuart Corporation, made loans to and negotiated to buy Northerlin. Because of Caterino's role with Northerlin, the Internal Revenue Service sought to hold him personally liable for Northerlin's failure to remit the withheld taxes. After a bench trial in the United States District Court for the District of Massachusetts, the court held Caterino liable for the taxes withheld for the first two quarters of 1974 and entered judgment against him in the sum of $128,505.30 with interest from the date of assessment, April 11, 1977. Caterino appeals. We affirm.

* Of the Third Circuit, sitting by designation.

## I.

### A.

The Internal Revenue Code requires employers to withhold social security and federal income taxes from employees' wages, 26 U.S.C. §§ 3102, 3402 (1982), and to hold such amounts in trust for the United States. 26 U.S.C. § 7501 (1982). Because the Internal Revenue Service (IRS) has no recourse against employees who have had income and social security taxes withheld from their wages, the Code imposes liability on certain individuals whom it deems to be in positions to determine whether employers remit withheld taxes to the government. 26 U.S.C. § 6672 provides in pertinent part:

§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax.

(a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to ... pay over such tax, ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

The two elements essential to liability of a third party are that the person be "responsible" and act "willfully" within the meaning of section 6672. *Harrington v. United States*, 504 F.2d 1306, 1312–13 (1st Cir. 1974); *Maggy v. United States*, 560 F.2d 1372, 1374–75 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978); *Werner v. United States*, 374 F.Supp. 558, 560 (D.Conn.1974), *aff'd per curiam*, 512 F.2d 1381 (2d Cir.1975). The issue in this appeal is whether the factual findings that support the district court's conclusions of responsibility and willfulness are clearly erroneous.

### B.

Northerlin Company, Inc. at all times relevant to this case engaged in waterproofing basements through its twelve subsidiaries and through its own division, the Vulcan Basement Waterproofing Company. Edward Gilbert held a controlling interest in Northerlin until Caterino purchased all of the outstanding capital stock on June 3, 1974.

In early 1973, Caterino began negotiations on behalf of Graham Stuart, in which he held the majority stock, to purchase the assets of Northerlin. Graham Stuart is a company organized to hold ownership interests in other companies. On January 25, 1973, Caterino in his personal capacity signed a note in the amount of $240,000 to the order of Northerlin for its use as collateral on a bank loan. Through this note Caterino effectively guaranteed a loan to Northerlin. On July 30, 1973, Graham Stuart entered into a written agreement to purchase all of Northerlin's assets, including the stock in its subsidiaries. Under the agreement, the purchase was to be consummated on August 31, 1973, when Northerlin would be required to submit certified financial statements. Northerlin, however, failed to submit the statements and the parties postponed the sale. As matters developed, they never concluded the sale.

In the meantime, Caterino, acting on an individual basis and at times in a corporate capacity in behalf of Graham Stuart, undertook a series of measures to aid Northerlin in surmounting its financial problems. In August 1973, he assisted Northerlin in obtaining a loan from the Northern Ohio Bank in the sum of $500,000. On September 5, 1973, Graham Stuart, having opened a checking account a few days before with Northerlin's address, adopted a resolution authorizing Caterino, a Northerlin officer, and Northerlin's general manager, Gilbert, to sign checks on that account.

On October 29, 1973, Caterino, as president of Graham Stuart, borrowed $300,000 from the Northern Ohio Bank and lent it to Northerlin. Caterino testified that he made the loan to keep Northerlin in operation until it entered its season. Caterino also visited most of Northerlin's branches. He negotiated a lease on behalf of Northerlin for one branch and, in response to his recommendations, Northerlin closed several others.

In December 1973 Caterino became involved in the replacement of Northerlin's general manager Gilbert with Jost Fleck. In a letter he wrote January 17, 1974, to his attorney at the request of the Securities and Exchange Commission, Caterino referred to this event as a "management change[ ] made by me." The district court, however, found that Caterino did not alone have the power to make the change at that time but "put his weight behind" a decision made by Northerlin officials. Gilbert resigned on January 4, 1974, and Fleck became general manager. On January 18, 1974, Caterino wrote a letter to the Northern Ohio Bank authorizing Northerlin employees Schutte, Fleck, and Verville to transfer funds from the Graham Stuart account by telephone.

By April 1974, the prospects of keeping Northerlin afloat had become rather bleak. Northerlin's officers had abandoned the company. A Northerlin employee prepared Northerlin's first quarter 1974 payroll tax return and because of the vacuum in management mailed it to Caterino. Caterino and his bookkeeper sought the advice of Graham Stuart's certified public accountant, who advised the bookkeeper to sign the form as "agent" and mail it to the IRS. The bookkeeper did so, he testified, in order to avoid the imposition of penalties on Northerlin and the further weakening of the company. In July 1974 Graham Stuart received Northerlin's completed and unsigned return for the second quarter of 1974. The bookkeeper again signed as agent and mailed the return to the IRS. On June 3, 1974, approximately a month before Graham Stuart received the second tax return, Caterino purchased all outstanding Northerlin stock and became the sole owner of the company.

On April 11, 1977, the IRS assessed a 100 percent tax penalty of $510,010.41 against Caterino pursuant to 26 U.S.C. § 6672. The amount comprised taxes withheld from wages for all four quarters of 1973 and the first two quarters of 1974. To contest the assessment, Caterino paid $200, the withholding taxes for one employee for the first quarter of 1973. He then filed a claim for a refund, which the Government denied. Caterino initiated this refund suit and the Government counterclaimed for $420,041.79.

After a two day bench trial the court concluded that Caterino's involvement with Northerlin was insufficient to make him "responsible" for 1973 under section 6672 but was sufficient to make him "responsible" for the first two quarters of 1974. The court accordingly entered judgment requiring Caterino to pay the withholding taxes for that period.

Caterino raised two issues in an earlier appeal. He argued, first, that the court held him liable solely because he caused the tax returns to be filed, and second, that the district court had failed to explicitly find his conduct was willful, and that his conduct could not have been willful because he lacked the power to avoid non-payment. The Government responded that first, the filing of the returns was but one of a number of indicia of Caterino's ability to control Northerlin's affairs and second, the record demonstrated the presence of willfulness and the court's failure to explicitly so find was not reversible error.

On December 4, 1984, this court in an unpublished opinion stated that we were "unable to discern the critical findings and theory upon which the district court awarded judgment to the United States for the first two quarters of 1974." We could not determine whether the trial court imposed liability because Caterino had power in Northerlin's affairs or if it employed some "unfamiliar § 6672 test" based solely on Caterino's filing of the forms. We therefore vacated the judgment and remanded for clarification.

Taxpayer filed no new pleadings. The district court entered a memorandum and order holding that Caterino was not entitled to a refund and that the Government should prevail on its counterclaim. The court did not rely solely on Caterino's filing of the tax returns, but considered the filing to be some evidence of the passage to him of control by default. Further, it found

incredible Caterino's testimony that he asserted no control over Northerlin's daily affairs after Fleck left. Caterino appeals.

## II.

Our task on appeal is to determine, first, whether the district court erred in finding that Caterino had sufficient control over Northerlin to render him "responsible" under section 6672 for the failure to remit the taxes withheld, and, second, whether the district court's findings support an inference of "willfulness." We turn to the former issue.

## A.

Courts have explicitly given the word "responsible" a broad interpretation. *Commonwealth National Bank of Dallas v. United States*, 665 F.2d 743, 757 (5th Cir.1982). They have fashioned an elastic definition predicated upon the function of an individual in the employer's business, not the level of the office held: whether the person had the power to determine whether the taxes should be remitted or paid or had "the final word as to what bills should or should not be paid and when." *Adams v. United States*, 504 F.2d 73, 75 (7th Cir.1974), *cert. denied sub nom. Estate of Klein v. Commissioner*, 421 U.S. 991, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975). In the context of this case, "the word 'final' means significant rather than exclusive control over the disbursement of funds." *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir.1978); *Emshwiller v. United States*, 565 F.2d 1042, 1045 (8th Cir.1977); *Adams*, 504 F.2d at 75. Under certain circumstances, lenders and even employees of lenders have been held "responsible" under section 6672. *Fidelity Bank N.A. v. United States*, 616 F.2d 1181, 1185 (10th Cir.1980); *United States v. Graham*, 309 F.2d 210, 212 (9th Cir.1962).

■ Although the rule appears harsh, as in other tax litigation a person who challenges a section 6672 assessment bears the burden of persuasion to prove lack of control. *See United States v. Rexach*, 482 F.2d 10, 16–17 (1st Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973); *United States v. Pompanio*, 635 F.2d 293, 296 (4th Cir.1980). The district court concluded that Caterino did not carry this burden and is therefore "responsible" under section 6672.

Central to this appeal is Caterino's contention that the district court erred in finding that, for the first two quarters of 1974, he had sufficient control of the company to decide whom to pay and not to pay. This court cannot reverse merely because it is convinced that it would have decided the question differently; we must ascertain whether the finding of fact is clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). We must affirm if the finding is reasonably supported on the record as a whole, *Bruce Drug, Inc. v. Hollister Inc.*, 688 F.2d 853, 854 (1st Cir. 1982). We must reverse when a review of the entire evidence leaves this court with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ We are persuaded that the district court's overview of Caterino's evolving relationship with Northerlin is accurate. Caterino commenced his relationship with Northerlin in a normal effort to have Graham Stuart acquire it. By the fall of 1973, however, his frustrated struggle to consummate the purchase reached a point where he personally was becoming directly involved in the financial and operational problems of the foundering prospect. He lent money to Northerlin because of the planned acquisition; when it became evident that the sale could not be concluded, Caterino cemented his relationship to protect his loans. He testified that he asserted no control over Northerlin's daily affairs prior to purchasing the company's capital stock in July 1974, despite his frequent contacts with the company. The district court, however, did not find this testimony to be credible. Moreover, failure to assert control over the operations of the company

is not sufficient to allow Caterino to escape liability under section 6672. It may appear severe to impose liability upon a non-officer of a company, but Congress has chosen to impose responsibility on one who has the ability to determine whom a company will or will not pay.[1] *Adams v. United States, supra.*

■ Early in 1974, by virtue of the substantial loans Caterino had arranged or guaranteed for Northerlin, he had become a dominant force in piloting the course of the company. He was instrumental in installing Fleck as general manager. Fleck's abandonment of Northerlin created a power vacuum and Northerlin employees apparently looked to Caterino to fill it. The mailing of the withholding tax returns to Caterino illustrated the devolution of authority to him. The evidence shows that Caterino did have the ability to significantly determine the flow of disbursements of funds by Northerlin. He did not become liable solely by ordering his bookkeeper to sign and mail the forms. Rather, the management's abdication together with the mailing of the returns to and their filing by Caterino demonstrate that he had become the only remaining authority figure and that he had the power to substantially control whom Northerlin paid. We conclude that the district court's finding that Caterino had sufficient power in early April 1974 to control what creditors Northerlin would pay is not clearly erroneous. Therefore, its conclusion that Caterino is "responsible" within the meaning of section 6672 is not incorrect.

## B.

■ The district court did not directly address the "willfulness" requirement.

Willfulness in this context is the "voluntary, conscious, and intentional decision to prefer other creditors to the United States." *Harrington,* 504 F.2d at 1311; *Newsome v. United States,* 431 F.2d at 742, 746 (5th Cir.1970). Any responsible person who knows the taxes are not paid and allows the business to pay other creditors acts willfully. *See Maggy,* 560 F.2d at 1375; *Hartman v. United States,* 538 F.2d 1336, 1341 (8th Cir.1976). Evil motive and specific intent are not necessary elements. *Harrington,* 504 F.2d at 1311; *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.1970). Mere knowledge, or reckless disregard for known risks, is sufficient. *Monday,* 421 F.2d at 1215.

■ It is undisputed that Caterino learned of the unpaid 1973 withholding taxes no later than March 1974, and of the unpaid 1974 withholding taxes when he received the returns in April and July of 1974. He contends, however, that no evidence was introduced that in 1974 Northerlin diverted funds to pay other creditors or that it even had any funds. This argument fails for two reasons: first, Caterino did not raise the issue in the district court; second, he had the statutory burden of proof in this proceeding and he never attempted to meet it on this issue.

Wilfulness for purpose of section 6672 means no more than knowledge that taxes are due and withheld and conscious disregard of the obligation to remit them. We have no difficulty in inferring willfulness from the district court's finding that Caterino had assumed control over Northerlin early in 1974 and had directed the filing of the tax returns.[2]

1. Responsible persons under section 6672 can include those who are neither officers nor employees of the corporation owing the taxes. *Fidelity Bank v. United States,* 616 F.2d 1181, 1185 (10th Cir.1980); *Pacific National Insurance Co. v. United States,* 422 F.2d 26, 30 (9th Cir.), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970); *Commonwealth National Bank of Dallas,* 665 F.2d at 750–51; *Werner,* 374 F.Supp. at 562. The statute may impose responsibility on a surety for the employer, *Pacific National Insurance Co.,* 422 F.2d at 30–31, a creditor of the employer, *Adams,* 504 F.2d at 75–76; *Mueller v. Nixon,* 470 F.2d 1348, 1350 (6th Cir.1972); *Commonwealth Bank of Dallas,* 665 F.2d at 755, and an individual who provides funds to the employer, *Werner,* 374 F.Supp. at 562.

2. Caterino argues on appeal that the trial judge after previous remand again failed to make findings of fact with respect to willfulness. Although such a finding would have facilitated our evaluation as to whether willfulness was present, the finding is not indispensable to an

## III.

We perceive no error in the district court's conclusion that Caterino was liable under 26 U.S.C. § 6672. Accordingly, we affirm the district court's judgment imposing liability on Caterino for Northerlin's withheld income and social security taxes for the first two quarters of 1974.

AFFIRMED.

understanding of the basis of the district court's decision. The failure of the trial judge in a non-jury action to comply with Rule 52(a) of the Federal Rules of Civil Procedure with respect to a finding of fact does not require a remand or impel a reversal of a correct judgment "if a complete understanding of the issues is possible in the absence of separate findings and if there is a sufficient basis for the appellate court's consideration of the merits of the case." *Gulf Towing Co., Inc. v. The Steam Tanker, Amoco New York,* 648 F.2d 242, 245 (5th Cir.1981); *Seligson v. Roth,* 402 F.2d 883, 887 (9th Cir. 1968). Willfulness in failing to pay the taxes may be inferred from the other facts found by the district court which will support the judgment and under such circumstances "such inferences should be deemed to have been drawn by the District Court." *Grover Hill Grain Co. v. Baughman-Oster, Inc.,* 728 F.2d 784, 793 (6th Cir.1984); *Triangle Conduit & Cable Co. v. Federal Trade Commission,* 168 F.2d 175, 179 (7th Cir.1948), *aff'd sub nom. Clayton Mark & Co. v. Federal Trade Commission,* 336 U.S. 956, 69 S.Ct. 888, 93 L.Ed. 1110 (1949). The willfulness issue is not so complex as to preclude our understanding of it without specific findings of fact. The absence of a finding is fatal if it could not be told which way the court intended. Here the inference is clear.