Edouard GADOURY, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

In re Edouard GADOURY, Jr.

Civ. A. No. 94–0683 P.
Bankruptcy No. 93–1418.

United States District Court,
D. Rhode Island.

July 13, 1995.

Guido R. Salvadore, Providence, R.I., for Edouard Gadoury, Jr.

John V. Cardone, U.S. Dept. of Justice, Tax Division, Washington, D.C., for the U.S.

Sheryl Serreze, U.S. Trustee, Providence, R.I.

## ORDER

PETTINE, Senior District Judge.

The Report and Recommendation of United States Magistrate Judge Robert W. Lovegreen, filed on May 17, 1995 in the above-captioned matter, is hereby accepted pursuant to 28 U.S.C. § 636(b)(1).

The Magistrate Judge's recommendation that the debtor, Edouard Gadoury's appeal be denied is hereby approved.

SO ORDERED.

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

Before the Court is the appeal of debtor, Edouard Gadoury, Jr., from two decisions of the Bankruptcy Court. The first is the Bankruptcy Court's July 7, 1993 order ("July 7 Order"), vacating its previous order granting the debtor's motion for a determination of tax liability and for a refund of monies seized from him by the United States of America ("USA"). The second is the Bankruptcy Court's judgment on the merits of debtor's motion for a determination of tax liability in favor of the USA and against debtor. This court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158, 1334. This matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Court 32(c)(1). Based on the following analysis, I recommend that the debtor's appeal be denied.

## Procedural History

This litigation originates from the October 14, 1991 assessment by the United States Internal Revenue Service ("IRS") in the amount of $190,654 against the debtor as a person responsible for the non-payment of employee withholding taxes by debtor's employers, Sprague Metal Box and Specialty Co. ("Sprague") and B & C Tool Co. ("B & C"), for the third and fourth quarters of 1988 pursuant to 26 U.S.C. § 6672. Section 6672 states in pertinent part:

(a) **General rule.** Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . .

26 U.S.C. § 6672. Based on the assessment, the IRS seized cash assets from the debtor in the approximate amount of $63,172.13. Thereafter, in August, 1992, the debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301 et seq. In November, 1992, his case was converted to one under Chapter 11, 11 U.S.C. § 1101 et seq., and most recently has been converted to a Chapter 7 liquidation proceeding, 11 U.S.C. § 701 et seq. On November, 18, 1992, the IRS filed an amended proof of claim in the amount of $132,580.56, the remainder of the § 6672 penalty outstanding on that date.

On or about March 22, 1993, debtor filed a motion in his bankruptcy case to determine his liability for the taxes assessed and seeking a refund of the assets previously seized by the IRS. The United States Attorney's Office acknowledges it received the motion, but believing the motion to be simply a request for hearing on the issues raised therein, it did not object. As a result, on April 22, 1993, the debtor's motion was granted pursuant to Rule 10(d) of the Local Rules of the U.S. Bankruptcy Court for the District of Rhode Island ("April 22 Order"). After receiving the order granting debtor's motion and being informed by the Bankruptcy Court Clerk's Office that it in effect granted the debtor the relief he sought, the USA, on April 29, 1993, moved to vacate the April 22

Order. In its motion to vacate, the USA argued that the debtor's motion only sought a hearing to determine his liability as to the taxes at issue and in the alternative, that the April 22 Order was violative of Fed.R.Civ.P. 55(e), made applicable in the bankruptcy case by Fed.R.Bankr.P. 7055. Rule 55(e) states:

> No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court.

Fed.R.Civ.P. 55(e). The government contended that the Bankruptcy Court's granting of the debtor's motion on its merits was tantamount to a judgment by default against the USA without the debtor establishing his claim by satisfactory evidence and thus, violated Rule 55(e).

The debtor objected to the motion to vacate on May 5, 1993 and thereafter, moved for oral proof of claim and entry of judgment upon the April 22 Order. On July 7, 1993, after a hearing, the Bankruptcy Court granted the USA's motion to vacate. Debtor then filed a motion in this Court for leave to file an interlocutory appeal from the July 7 Order of the Bankruptcy Court but was denied such leave on February 24, 1994.

On October 24, 1994, the Bankruptcy Court held an evidentiary hearing on debtor's motion to determine his tax liability pursuant to 26 U.S.C. § 6672 with regard to the employment tax liabilities of Sprague and B & C. In that hearing, the Bankruptcy Court took oral testimony, received a number of exhibits into evidence and incorporate by reference the admitted facts as set forth in the Joint Pretrial Order submitted by the parties. Based on that evidence, the Bankruptcy Court concluded that the debtor was liable under § 6672 and on October 27, 1994, entered an order denying the debtor's motion for entry of judgment and oral proof of claim and granting the USA's proof of claim pursuant to its § 6672 assessment in the amount of $132,580.56. On the same day, the Bankruptcy Court entered judgment on this order.

*Facts*

Debtor began working at Sprague in 1986. During the period in question, the third and fourth quarters of 1988, debtor held the title of "Controller" and kept the account books for Sprague and its related companies, including B & C. Sprague and B & C employed a payroll service to do their respective payrolls. The debtor would provide the payroll service with the names of employees and the total hours worked and the service would prepare the payroll, prepare and sign the paychecks, inform the companies of the amount of the gross payroll, the amount of the net payroll and the amount of the necessary deductions. The debtor's duties also included overseeing accounts receivable, accounts payable and billing functions.

In July, 1987, Sprague purchased JADCO, a manufacturer of specialty metal goods, from Messrs. David Wehr and David Florence ("Florence"). Thereafter, Florence assumed the position of Administrative Vice President and became the debtor's immediate superior. Thereafter, specifically during the third and fourth quarters of 1988, the only people authorized to sign checks on behalf of Sprague and B & C were the companies' owner, Bernard Racine ("Racine"), Florence and the debtor. Both before and after the acquisition of JADCO, Sprague had only one checking account from which funds were transferred to the payroll service to cover the payroll. Only one of the authorized signatures was required on checks drawn on this account.

After the acquisition of JADCO and until Sprague ultimately went into receivership in 1989, the company continued to use the payroll service to prepare and process payroll checks. As before, a list of employees and the hours they worked were transmitted to the payroll service, and checks would be returned to Sprague. Elizabeth Mazzotta, an employee of Sprague, would deposit the withheld income and FICA taxes with the USA. After she left Sprague, sometime in 1988, the debtor preformed that function. He also signed the Employer's Quarterly Federal Tax Return, Form 941, for Sprague and was aware that payroll taxes were owed to the USA and not being paid.

The debtor was not an officer, director or stockholder. He does not possess a college degree nor is he a Certified Public Accountant. However, he is a high school graduate and took certain college level courses in accounting. At Sprague, he was head of the accounting department, with certain clerical and bookkeeping employees reporting to him. He also interviewed prospective clerical or bookkeeping employees and made recommendations regarding their employment with Sprague but had no independent authority to hire and fire employees. Florence was a Certified Public Accountant and a 10% stockholder in Sprague. Racine was an 80% stockholder in Sprague.

At the October 24, 1994 hearing, the debtor testified himself and presented testimony from Racine, Marion Lawson Roberts ("Roberts"), a "full-charge bookkeeper" at Sprague, Larry Bartram ("Bartram"), owner of a company that would finish goods that Sprague manufactured as a subcontractor for Sprague, and David Martinelli, an employee of a company which sold raw materials to Sprague. The relevant testimony of these witnesses was essentially the same: that Florence, not the debtor, had complete control over which creditors would be paid, that debtor could not pay any creditor without Florence's approval and that he was unable to write a check on behalf of Sprague without Florence's approval. The debtor testified that Florence determined daily which creditors would be paid, instructed the debtor as to what checks to draw up and reviewed those checks before they were sent out. However, the debtor did testify that he wrote some checks without Florence's approval after being directed to do so by Racine and had the authority to write out and send checks in small amounts without Florence's approval to pay for supplies. The debtor also testified that he could have written a check to pay the payroll taxes, but he would have been fired, and if brought to his attention, Florence would have prevented the check from being sent. He specifically testified that he had informed Florence that the payroll taxes had to be paid but that Florence told him not to worry about it and decided not to pay the tax.

The USA offered testimony from Florence which contradicted the notion that the debtor had no authority to pay bills and taxes. Florence testified that after June of 1988, at the request of Racine, he changed his focus from administration and took over the day to day operations of the manufacturing process. The debtor kept a weekly log of the expected payments on accounts receivable and the bills that he determined had to be paid. The funds left over would be used by Florence to purchase raw materials for production. According to Florence, it was the debtor who determined and cut checks for the bills that had to be paid. Those payments included payroll, utilities and payroll taxes, but the payroll taxes were historically paid late. He never told the debtor not to pay payroll taxes and expected that the debtor would pay the taxes. Florence did review checks that had been drawn up by the debtor but only those paid from the block of money that the debtor informed Florence he could use to pay for materials for manufacturing. Florence stated that he had also been assessed by the IRS for Sprague and B & C's non-payment of payroll taxes during the third and fourth quarters of 1988 pursuant to 26 U.S.C. § 6672.

### Discussion

### I. Federal Rule of Civil Procedure 55(e)

The debtor assigns as error the Bankruptcy Court's July 7 Order vacating its prior order which granted the debtor's motion for a determination of his tax liability pursuant to local rule because the USA failed to object. The debtor argues that the Bankruptcy Court erred as a matter of law in concluding that its automatic granting of the debtor's motion pursuant to local rule was unauthorized in light of Fed.R.Civ.P. 55(e)'s prohibition of default judgments being entered against the USA without the claimant establishing his claim by satisfactory evidence. This Court reviews the Bankruptcy Court's rulings on questions of law *de novo. In re Anderson*, 128 B.R. 850, 853 (D.R.I. 1991). A review of the relevant case law reveals that under the circumstances of this case, the Bankruptcy Court's application of Fed.R.Civ.P. 55(e) to the debtor's motion did

not amount to an error of law warranting reversal.

Federal Rule of Civil Procedure 55(e) provides:

> Judgment Against the United States. No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court.

"The Rule rests on the rational that the taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant." *Alameda v. Secretary of Health, Education and Welfare,* 622 F.2d 1044, 1047 (1st Cir.1980) (quoting *Campbell v. Eastland,* 307 F.2d 478, 491 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963)).

■ The initial relevant question is whether the Bankruptcy Court's automatic granting of the debtor's motion to determine his tax liability, because the USA failed to object, constitutes a default within the meaning of Fed.R.Civ.P. 55. Federal Rule of Civil Procedure 55(a) provides:

> Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

"The entry of default is similar to a finding of liability but is not a final judgment." *Alameda,* 622 F.2d at 1048 n. 3. The failure to file an opposition memorandum on a dispositive matter can be considered as a default under Rule 55(a) for failure "to otherwise defend" the suit. *Id.* at 1048 (finding the Secretary of Health Education and Welfare's failure to file court ordered memorandum in support of its administrative decisions "amounted to a failure under Fed.R.Civ.P. 55(a) to 'otherwise defend' the suit"). The Bankruptcy Court's automatic granting of the debtor's motion to determine his tax liability may also be considered as a default under Rule 55(a), as the motion requested the court to resolve the ultimate issue in this contested matter, the debtor's tax liability, and was granted in essence, because the USA failed to defend within the time limit prescribed. As a result, Rule 55 applies.

In countering this conclusion, the debtor cites to the United States District Court for the District of Maine's decision in *Ouellette v. Heckler,* 102 F.R.D. 940 (D.Me.1984), but the holding in that case is contrary to the reasoning in *Alameda* and is therefore not persuasive. In *Ouellette,* the plaintiff brought suit seeking judicial review of final decision of the Secretary of Health Education and Welfare. *Id.* at 941. The plaintiff filed a motion for judgment on the pleadings which was granted by local rule of court, because the Secretary had failed to respond. *Id.* at 942. The Secretary moved the court to vacate its order granting the plaintiff's motion, arguing that the order was prohibited by Fed.R.Civ.P. 55(e). The District Court, after acknowledging the First Circuit's holding in *Alameda,* denied the Secretary's motion to vacate, finding that the local rule under which the court granted the plaintiff's motion for judgment on the pleadings was not a rule of default and therefore, was not subject to Fed.R.Civ.P. 55(e). Instead, the court held that the local rule "merely provides a standard by which the court can assume that inaction amounts to waiver" and that such waiver "when incorporated in a decree of the court [does] not amount to a default judgment against the United States." *Ouellette v. Heckler,* 102 F.R.D. at 943.

■ This holding is contrary to the reasoning in *Alameda* where the First Circuit stated that "[t]he entry of default is similar to finding of liability, but is not a final judgment." *Alameda,* 622 F.2d at 1048 n. 3. Clearly, the granting of a motion for judgment on the pleadings, as in *Ouellette,* as well as the Bankruptcy Court's granting of the debtor's motion for a determination of his tax liabilities in the present case, are "findings of liability" and thus, under *Alameda,* must be treated as defaults within the meaning of Rule 55(a).

"Rule 55(e)'s limitation on default *judgments* does not prohibit the *entry* of default against the government under Rule 55(a). It does not relieve the government from the duty to defend cases or obey the court's

orders." *Alameda*, 622 F.2d at 1048 (emphasis in original). Thus, to the extent that the Bankruptcy Court held that its order automatically granting the debtor's motion was unauthorized, because Rule 55(e) prohibits the entry of default against the USA, that holding was in error. However, regardless of the court's finding regarding its authority to automatically grant the debtor's motion, under the circumstances in this case, by holding an evidentiary hearing, the court properly complied with Rule 55(e)'s requirement that the debtor must establish his claims through satisfactory evidence.

■ While Rule 55(e) does not prohibit the *entry* of default against the USA, it does require that the claimant establish his or her claim "by evidence satisfactory to the court" before any judgment may be entered upon that default against the USA. *Alameda*, 622 F.2d at 1048. Thus, in the practical sense, the claimant may not receive the relief he or she seeks without providing evidence which satisfies the court that he or she is entitled to that relief. What constitutes "evidence satisfactory to the court" in this context is not entirely clear. However, "the natural intendment of this language is that after entry of default against the government, the quantum and quality of evidence that might satisfy a court can be less than normally required." *Id.* In *Alameda*, the First Circuit interpreted this requirement in the context of claims seeking judicial review of administrative decisions by the Secretary of Health, Education and Welfare when the Secretary had been defaulted for failing to file memoranda supporting the administrative decisions. In doing so, the court ruled that the claimant must still "establish" his or her claim by the statutorily required showing that there is no "substantial evidence" supporting the Secretary's determinations. *Id.* However, noting that "[t]he [District Court] must not conduct a de novo evidentiary hearing, but rather should base its conclusion on the administrative record alone," the court held that the District Court need only "rely on a claimant's brief pointing out the lack of sufficient evidentiary support in the administrative transcript for the Secretary's conclusion." *Id.* (footnote omitted). Thus, the First Circuit retained the standard of proof imposed upon a claimant in the absence of a default by the USA, but allowed the claimant to satisfy that standard through a less demanding procedure.

Outside of the context of cases seeking judicial review of Department of Health, Education and Welfare administrative decisions, a flexible approach has been utilized in determining what procedures the court should employ in determining whether Rule 55(e)'s requirement of evidence satisfactory to the court is fulfilled. The court in *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2nd Cir.1994), held that

> [w]hile in some cases [Rule 55(e) ] will require a hearing, we have held that Rule 55(e) does not "require an evidentiary hearing if one would ordinarily not have been held, nor [does the Rule] require the court to demand more or different evidence than it would ordinarily receive in order to make its decision."

*Id.* at 242 (quoting *Marziliano v. Heckler*, 728 F.2d 151, 158 (2nd Cir.1984)).

Here, the Bankruptcy Court granted the USA's motion to vacate with the stated intention to "put the claimant—the debtor, in this case—to the task of establishing his claim or right to relief by evidence satisfactory to the Court." (Tr. of 7/1/93 hearing at 13.) The court then concluded: "we'll have a hearing." *Id.* This was the appropriate result under the Rule 55(e) standard as defined in *Alameda* and *Commercial Bank of Kuwait* if the default against the USA had remained in place. Therefore, the fact that the Bankruptcy Court may have improperly vacated its original order granting the debtor's motion to determine his tax liability is largely irrelevant. This is so because at that juncture in the Bankruptcy Court proceedings, the record indicates that there was no evidence before the court regarding the debtor's tax liability under § 6672. All that had been offered up to that point was the debtor's motion to determine his tax liability and an unverified memorandum in support thereof. In light of the lack of case law defining what specifically constitutes "evidence satisfactory to the court" under Rule 55(e) and what procedures are required by the court to make such a determination, I cannot find

error in the Bankruptcy Judge's decision to hold an evidentiary hearing to determine if the debtor was able to satisfy this burden. In fact, it was logical in this case for the court to order an evidentiary hearing when it had no evidence before it to determine whether the debtor's claims regarding his tax liability were valid. Therefore, the evidentiary hearing the Bankruptcy Court held was in effect what was required under Rule 55(e) whether or not the court vacated the default against the USA. Consequently, in the context of this case, the procedural impropriety of vacating the original order cannot be considered an error of law warranting reversal. The question then becomes whether or not the evidence presented at the hearing on this matter satisfied the court that the debtor was entitled to the relief he sought, specifically, that he was not liable for the taxes that had been assessed against him pursuant to § 6672. It is to this question that I now turn.

## II. *26 U.S.C. § 6672*

■ The debtor claims the Bankruptcy Court's factual findings that he was liable for Sprague's nonpayment of payroll taxes pursuant to 26 U.S.C. § 6672 were in error. This Court reviews these findings of fact by the Bankruptcy Court for clear error. *In re Anderson,* 128 B.R. at 852. I find no clear error as to the Bankruptcy Court's finding that debtor is liable pursuant to § 6672 and therefore, the Bankruptcy Court's judgment should be affirmed.

The Internal Revenue Code requires employers to withhold social security and federal income taxes from their employees pay, 26 U.S.C. §§ 3102, 3402, and to hold those funds in trust for the USA, 26 U.S.C. § 7501. Because the IRS has no recourse against employees who have had these taxes withheld, the IRS is empowered by 26 U.S.C. § 6672 to impose liability on certain individuals who are deemed to be in positions to determine whether the withheld taxes are paid to the IRS. Section 6672 states in pertinent part:

(a) **General rule.** Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . .

■ "The purpose of the 100 percent penalty provision 'is to permit the taxing authority to reach those [persons] responsible for the corporations' failure to pay the taxes which are owing.'" *Godfrey v. U.S.,* 748 F.2d 1568, 1574 (Fed.Cir.1984) (quoting *White v. U.S.,* 372 F.2d 513, 516 (Ct.Cl.1967)). More than one person may be assessed pursuant to § 6672, and each person assessed is liable for the total amount of unpaid withholding taxes. *In re Bourque,* 153 B.R. 87, 92 (Bankr.D.Mass.1993). Liability pursuant to § 6672 is contingent upon a finding that the taxpayer is "responsible" and acted "willfully" within the meaning of the statute. *Caterino v. U.S.,* 794 F.2d 1, 2 (1st Cir.1986), *cert. denied,* 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987).

The First Circuit has stated that in the context of § 6672,

[c]ourts have explicitly given the word "responsible" a broad interpretation. They have fashioned an elastic definition predicated upon the function of an individual in the employer's business, not the level of the office held: whether the person had the power to determine whether the taxes should be remitted or paid or had "the final word as to what bills should or should not be paid and when." . . . "[T]he word 'final' means significant rather than exclusive control over the disbursement of funds."

*Caterino v. U.S.,* 794 F.2d at 5 (citations omitted).

■ Responsibility has been defined in terms of the taxpayer's status, duty and authority. *In re Bourque,* 153 B.R. at 92.

A person's "duty" under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds. It is a test of substance, not form. Thus, where a person has authority to sign the

checks of the corporation, or to prevent their issuance by denying a necessary signature, or where that person controls the voting stock of the corporation, he will generally be held responsible.

*Id.* (quoting *Godfrey v. U.S.,* 748 F.2d at 1576 (omitting citations)). Other factors relevant to a determination of whether the taxpayer is "responsible" include the identity of the person signing the tax returns, the identity of the person who hired and fired employees and the identity of the individual in control of the financial affairs of the company. *In re Bourque,* 153 B.R. at 93.

■ Liability under § 6672 may be imposed on an employee of the offending company who is neither an officer nor a shareholder of the corporation, *Caterino v. U.S.,* 794 F.2d at 6, and "[a]uthority to pay ... means *effective* power to pay, and the possibility of being fired for disobeying instructions not to pay the taxes does not make a person any less responsible for payment." *In re Bourque,* 153 B.R. at 93 (quoting *Howard v. U.S.,* 711 F.2d 729, 734 (5th Cir.1983)).

■ The debtor does not dispute the USA's contention that once the assessment was made against him by the IRS, the burden shifted to the debtor to prove that he is not liable for the tax. *Caterino v. U.S.,* 794 F.2d at 5; *but see In re Premo,* 116 B.R. 515, 520 (Bankr.E.D.Mich.1990) (pointing out divergence in case law on this issue in bankruptcy context). Thus, for purposes of his appeal, he is considered to have had this burden.

As stated, the Bankruptcy Court's finding that the debtor was responsible under § 6672 is reversible only for clear error. *Caterino v. U.S.,* 794 F.2d at 5.

The clearly erroneous standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the cases differently." Rather, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1080 (1st Cir.1995) (citations omitted). Although there is some conflicting evidence in this record, the Bankruptcy Court's ruling that the debtor failed to prove his claim that he was not liable under § 6672 is not marked by clear error.

■ There is ample evidence in the record to support the Bankruptcy Court's finding that the debtor was "responsible." The debtor's duties included overseeing accounts receivable, accounts payable and billing functions, and while he did not have the authority to hire and fire, he did interview and make recommendations regarding the employment of certain clerical and bookkeeping employees and they reported to him. (Joint Pretrial Order, Bankr.Docket No. 26 ¶¶ 11, 19.) After Sprague employee Elizabeth Mazzotta left the company in 1988, the debtor assumed the task of depositing with the IRS the income and FICA taxes withheld from Sprague employees wages. *Id.* ¶ 21. He also signed the Form 941 Employer's Quarterly Federal Tax Return for Sprague. *Id.* ¶ 22. Further, the debtor was authorized to sign checks individually for Sprague and testified that he wrote checks without Florence's approval when directed to by Racine or when Florence was not present if the checks were in small amounts. (Tr. of 10/24/94 Bankr.Ct.Hr'g ("Tr.") at 38, 59.) The debtor also testified that he could have written a check to pay the payroll taxes, but would have been fired by Florence for doing so. *Id.* at 47.

Florence testified that it was the debtor's job to collect receivables, to pay the bills, to do the payroll and to run the accounting functions of the company. *Id.* at 193. He further stated that the debtor kept a weekly log of the expected payments on accounts receivables and the bills that he determined had to be paid. *Id.* at 154–55. He would then inform Florence of what funds were left over for Florence to use to purchase raw materials for production. *Id.* at 155. According to Florence, it was the debtor who would determine which creditors had to be

paid before funds were left over for the purchase of raw materials. *Id.* Florence stated he never instructed the debtor not to pay payroll taxes and expected the debtor to pay the payroll taxes in the normal course of paying the bills. *Id.* at 198. The culmination of this evidence sufficiently demonstrates that the debtor had significant control over the disbursement of Sprague and B & C funds such that he may be considered "responsible" under § 6672.

In the face of this evidence, the debtor complains that the Bankruptcy Court erred by placing too much emphasis on his check writing abilities and by disregarding his own and other witnesses testimony that he did not have the requisite authority to be "responsible" under § 6672. However, "when there are two permissible views of the evidence, the trier of facts' acceptance of one of them cannot be clearly wrong. This is particularly so where, as here, the findings turn on the credibility of witnesses." *Doty v. Sewall,* 908 F.2d 1053, 1061 (1st Cir.1990) (citations omitted). "Particular deference is due the trial court findings dependent on witness credibility, to the degree that error is seldom considered 'clear' unless the credibility assessments were based on testimony which was inherently implausible, internally inconsistent, or critically impeached." *Keller v. U.S.,* 38 F.3d 16, 25 (1st Cir.1994).

■ The debtor points to the fact that Florence has also been assessed by the IRS for the non-payment of the taxes at issue and thus has an interest in an outcome unfavorable to the debtor in this matter. Therefore, he argues Florence's testimony is not credible. This fact alone, however, does not make Florence's testimony inherently implausible, internally inconsistent or critically impeached. Moreover, as noted above, there was evidence in the record supporting the Bankruptcy Court's finding other than Florence's testimony, i.e. the joint pretrial order submitted by both parties and the debtors' own testimony. Consequently, the Bankruptcy Court's choice between the opposing

views presented by the parties cannot be considered clear error, and thus, its finding that the debtor was "responsible" for Sprague's non-payment of payroll taxes in the third and fourth quarters of 1988 should not be disturbed.

■ Likewise, the Bankruptcy Court's finding that the debtor willfully failed to pay taxes in violation of § 6672 is not clearly erroneous. The debtor's plaint regarding the Bankruptcy Court's finding on willfulness echoes his argument that he was not responsible for the non-payment of these taxes. He contends that he did not have the authority to decide which creditors would be paid and thus, could not have willfully failed to pay the taxes. He complains that the "Bankruptcy Court found willfulness based upon merely [the debtor's] knowledge that the taxes were due and unpaid. The Court did not consider his lack of voluntariness or personal fault." (Appellant's Brief at 25.) However, "[a]ny responsible person who knows that taxes are not paid and allows the business to pay other creditors acts willfully. Evil motive and specific intent are not necessary elements. Mere knowledge, or reckless disregard for known risks, is sufficient." *Caterino v. U.S.,* 794 F.2d at 6. As found above, the debtor was "responsible" within the meaning of § 6672, and he knew that taxes were not being paid while other creditors were (Joint Pretrial Order, Bankr.Docket No. 26 ¶ 23; Tr. at 44, 52–53). Consequently, the Bankruptcy Court's finding of willfulness was not clearly erroneous, and therefore, should be upheld. As a result, the appeal should be denied.

### Conclusion

Based on the foregoing analysis, I recommend the debtor's appeal be denied.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[1] Failure to file specific objec-

---

1. Rule 32, Local Rules of Court,; F.R.Civ.P. 72(b).

tions in a timely manner constitutes a waiver of the right to review by the district court.[2]

---

**2.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford* *Motor Co.,* 616 F.2d 603 (1st Cir.1980).