In re Robert P. COVENEY, Debtor.

Bankruptcy No. 94–44582–JFQ.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 12, 1996.

Arthur P. Bergeron, Gadbois & Bergeron, Marlboro, MA, for Robert P. Coveney.

Karen L. Paino, Massachusetts Dept. of Revenue, Leverett Saltonstall, Boston, MA, for Mitchell Adams, Commissioner of MDOR.

Joseph L. McQuade, Framingham, MA, for Thomas Inman.

Denise M. Pappalardo, Chapter 13 Trustee, Worcester, MA.

## DECISION DISALLOWING DOR CLAIM

JAMES F. QUEENAN, JR., Bankruptcy Judge.

This disputed claim proceeding arises out of the failure of Covynn, Inc. ("Covynn") to pay income taxes withheld from employees' wages and meals taxes collected from customers. The Massachusetts Department of Revenue ("DOR") has assessed these taxes against Robert P. Coveney, the chapter 13 debtor ("Debtor"), in his capacity as president, director and 25% stockholder of Covynn. Resolution of its claim presents a novel question of statutory interpretation which

has not been passed upon by a Massachusetts court. Implicated in the claim is the expansive "responsible person" doctrine fashioned by courts under the Internal Revenue Code.

On January 11, 1995, the DOR filed a $63,144.64 proof of claim against the Debtor. On December 13, 1995, it filed an amended proof of claim in the sum of $251,527.03. Both proofs are for withholding and meals taxes for the period between January of 1988 and January of 1989. Both assert secured status based upon filed liens. The Debtor objects to the DOR's claim in its entirety. The claim has added significance by reason of its nondischargeability in this chapter 13 proceeding. *See* 11 U.S.C. §§ 1328(a)(2), 507(a)(8)(C) (1994).

At the hearing, the parties filed an agreed statement of facts. Without objection from the DOR, the Debtor also filed a detailed affidavit containing statements consistent with the agreed statement of facts. I take as true all facts set forth in the agreed statement and the affidavit.

## I. FACTS

This is a sad story of mistaken trust on the part of the Debtor and callous breach of that trust by his business partner, A. Lawrence Glynn ("Glynn"). On May 5, 1983, the Debtor and Glynn, a friend from high school days, organized Covynn to purchase and operate an existing restaurant known as the Piave Square Pub, which was located in Marlborough, Massachusetts. The Debtor had previously worked in the food service business for a number of years. Glynn was a practicing attorney and a certified public accountant. The Debtor and Glynn arrived at an oral agreement on their respective duties. The Debtor was to manage the restaurant on a full-time basis. Glynn was to continue in the full-time practice of law. They agreed that Glynn's responsibilities were limited to the preparation and filing of all of Covynn's tax returns, payment of the taxes due and making the monthly payments due to Covynn's lenders. The Debtor was to have no such responsibilities.

Covynn's articles of organization named the Debtor as President, Glynn as Treasurer and the Debtor's wife, Paula A. Coveny, as Clerk. The Debtor, Glynn and their respective wives comprised a four-person board of directors. Each had a 25% stock interest. Ownership of the real estate was taken in the name of Piave Realty Trust, which was owned by the Debtor, Glynn and their wives in the same percentages.

The Debtor and Glynn abided by their agreement on allocated responsibilities. Covynn had one checking account, on which either the Debtor or Glynn could draw checks, signing singly. The Debtor managed the restaurant. He, or others under this supervision, deposited all revenues into Covynn's checking account. The Debtor signed checks payable to suppliers. Glynn came to the restaurant on a weekly basis to calculate the amount necessary to pay Covynn's outside payroll service a sufficient amount to cover payroll and payroll taxes, including income taxes withheld from wages. Glynn signed these checks. Glynn would also calculate the aggregate amount needed to pay Massachusetts meals taxes and the monthly bills owed to Covynn's lenders, and would write a check in this amount payable to himself as trustee of Piave Realty Trust (the Debtor being the other trustee). Glynn would then pay from the Trust the taxes and loan installments covered by the check. The Debtor never signed any checks drawn on the Trust's account.

In 1986, Covynn purchased a second, larger restaurant, the Oxford Restaurant, also located in Marlborough. Shortly thereafter, the Debtor and Glynn agreed there was too much work for the Debtor to manage both restaurants. As a result, Covynn ceased operating the Piave Square Pub. Piave Realty Trust leased the restaurant to two of Glynn's brothers. Thereafter, the Debtor had nothing further to do with the Piave Square Pub and Covynn received none of its revenues. The parties continued their same divided functions in the operation of the Oxford Restaurant. They took title to the real estate in the name of Oxford Realty Trust, which they owned with their wives in the same percentages.

In the spring of 1988, Glynn told the Debtor that Covynn was about $200,000 behind in paying its federal and state taxes. To pay the taxes, the Debtor and Glynn, on June 6, 1988, borrowed $200,000 from Glynn's mother, signing a $200,000 note and a mortgage covering the real estate owned by the Oxford Realty Trust. Glynn handled disbursement of the funds.

Thereafter, Glynn assured the Debtor that all taxes were being kept current. But in February or March of 1989 he told the Debtor Covynn had again fallen behind in taxes and that he had paid the taxes by using funds belonging to a client. Once again, the two borrowed from Glynn's mother, this time in the sum of $210,000. This second note, dated March 15, 1989, was secured by mortgages on their homes. The loan proceeds were payable to Glynn's law office, Glynn & Glynn. Glynn again handled disbursement of these funds.

The Debtor and his wife were by this point distraught over their financial condition. Shortly after the second loan from Glynn's mother, Glynn told the Debtor he had found a buyer for the Debtor's ownership interests who would hold the Debtor harmless from all the debts. On April 10, 1989, the Debtor and his wife signed an agreement with one Michael Moxley under which they sold to Moxley their 50% interest in Covynn and the two real estates trusts for a consideration consisting only of Moxley's agreement to hold them harmless from all debts owed by them, Covynn and the two trusts. The Debtor had incurred personal liability on some of these debts, in addition to his liability to Glynn's mother. The Debtor and his wife resigned from all offices in Covynn and both trusts effective on that same date. Glynn kept a minority interest in Covynn and the trusts.

Covynn, under the control of Moxley, soon filed tax returns with the DOR for meals and withholding taxes for the calendar year 1988 and that portion of 1989 preceding Moxley's ownership. No payment was enclosed with these returns. Nor did Moxley pay other creditors. Covynn soon ended up in bankruptcy. In subsequent litigation, the Debtor sought to hold Moxley responsible under his indemnification agreement. But the Debtor was unsuccessful in this effort. Attributing various defaults of Glynn to the Debtor because of their business relationship, the court released Moxley from his obligation to indemnify the Debtor.

On February 1, 1994, the DOR notified the Debtor it had assessed him $118,634.72 for Covynn's unpaid meals and withholding taxes for the period between January of 1988 and August of 1989. Following administrative proceedings, the DOR rescinded the assessment with respect to periods after April 10, 1989, when the Debtor terminated his activities with Covynn. But in this bankruptcy case it has filed an amended proof of claim for $251,527.03 for the period between January of 1988 and January of 1989. This amended proof includes taxes related to the Piave Square Pub, which had not been previously assessed because of the bankruptcy of Covynn.

## II. DEBTOR'S STATUTORY LIABILITY FOR COLLECTED MEALS TAXES AND TAXES WITHHELD FROM WAGES

Massachusetts General Laws, chapter 62B, section 5, imposes liability upon an "employer" who fails to withhold and pay Massachusetts income taxes withheld from its employees' wages. Section 5 provides in part:

> Every employer who fails to withhold or pay to the commissioner any sums required by this chapter to be withheld or paid shall be personally and individually liable therefor to the commonwealth. The term "employer," as used in this paragraph and in section eleven, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to withhold and pay over taxes in accordance with this section and section two. Any sum or sums withheld in accordance with the provisions of section two shall be deemed to be held in trust for the commonwealth. Mass.Gen.L. ch. 62B, § 5 (1988).

The Massachusetts meals tax statute reads much the same:

Every person who fails to pay to the commissioner any sums required by this chapter shall be personally and individually liable therefor to the commonwealth. The term "person," as used in this section, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to pay over the taxes imposed by this chapter. Mass. Gen.L. ch. 64H, § 16 (1988).

The Massachusetts Commissioner of Revenue has promulgated a regulation concerning who is "under a duty" to pay over withheld income taxes or collected meal taxes. It reads in part:

(2) *Definitions* .... [T]he following terms shall have the following meanings:

...

*Duty to pay over taxes,* an obligation to remit taxes that arises from a person's position, function, or responsibility undertaken on behalf of a corporation or partnership. Such obligation need not be a legally enforceable agreement between the corporation or partnership and the responsible person. Mass.Regs.Code tit. 830, § 62C, 31A.1(2) (1989).

■ It seems obvious from the statutes that holding corporate office is insufficient, of itself, to render an officer personally liable for unpaid corporate meals or withholding taxes. If it were, the statutes would simply say so. Instead, for personal liability to attach, the individual must "as such officer" be "under a duty to pay over the taxes ..." There are no Massachusetts court decisions interpreting this language.

Black defines the "duty" of one holding an office as follows: "Those obligations of performance, care, or observance which rest upon a person in an official or fiduciary capacity; as the duty of an executor, trustee, manager, etc." *Black's Law Dictionary* 453 (5th ed. 1979). Relating "duty" to obligation comports with common usage. Webster says "duty" includes "obligatory tasks, conduct, service or functions enjoined by order or usage according to rank, occupation, or profession." Webster's Third International Dictionary 705. The inquiry should therefore focus on whether, in fulfilling his *obligations* owed *to the corporation,* the Debtor was required to pay these taxes. The Commissioner's own regulation takes this approach. In interpreting the statutory reference to "duty," the Commissioner refers to "duty" as a person's "responsibility" which is "undertaken" on behalf of the "corporation."

I must therefore determine whether the Debtor's responsibility to the corporation encompassed the function of paying taxes. The inquiry is simplified by the express agreement on the matter made between the Debtor and Glynn. Glynn, not the Debtor, was charged with filing all tax returns and paying taxes. The Debtor's responsibilities were confined to supervising the restaurant's operations. Except for depositing receipts in Covynn's checking account and signing checks to pay suppliers and employees, it was agreed the Debtor had no financial responsibilities. And the parties abided by their agreement. The Debtor never paid Covynn's taxes and was never expected to do so. That duty was Glynn's and Glynn's alone. As a certified public accountant and lawyer, he was familiar with such matters. The Debtor was not. Glynn was Covynn's treasurer. Under the law of Massachusetts, as elsewhere, this is a position which normally imposes duties of a financial nature. *See Franklin Savings Bank v. Cochrane,* 182 Mass. 586, 66 N.E. 200 (1903).

The agreement on divided responsibilities between the Debtor and Glynn takes on an added dimension from their positions as directors. Having the stamp of director approval, the agreement is equivalent to a command from the board that each perform only the duties taken on in the agreement.

■ The DOR poses a rather ingenious argument. It ignores the "duty" language of the statute and the clear application of that language to the present facts. It ignores as well the Commissioner's own regulation. The DOR focuses instead on decisions of federal courts dealing with a provision of the Internal Revenue Code which is similar to the Massachusetts statutes. In doing so, the DOR fails to take into account an important consideration. Although the Internal Revenue Code contains similar "duty" language, it

also imposes a second test that must be met if personal liability for corporate withholding taxes is to attach. To become liable for unpaid corporate withholding taxes, an officer or employee must have "willfully" failed to pay the tax.

The Internal Revenue Code provides in part:

**Sec. 6671 Rules for application of assessable penalties.**

**(a) Penalty assessed as tax.**

The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.

**(b) Person defined.**

The term "person," as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

26 U.S.C. § 6671 (1994).

**Sec. 6672 Failure to collect and pay over tax, or attempt to evade or defeat tax.**

**(a) General rule.**

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 ... for any offense to which this section is applicable.

26 U.S.C. § 6672(a) (1944).

■ Because of the double requirement of duty and willfulness, the inquiry triggered by the duty requirement is "simply a threshold question." *Barnett v. IRS*, 988 F.2d 1449, 1454 (5th Cir.1993). Courts refer to this threshold question in terms of whether the individual is a "responsible person," a phrase which does not appear in the Internal Revenue Code. *E.g.*, *United States v. Rem*, 38 F.3d 634, 642 (2d Cir.1994); *Raba v. United States*, 977 F.2d 941, 943 (5th Cir.1992); *Thomsen v. United States*, 887 F.2d 12, 16 (1st Cir.1989); *Gustin v. United States*, 876 F.2d 485, 491–92 (5th Cir.1989); *George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987). The standard that determines responsible person status is a broad one related to the person's ability to influence or control corporate decisions on taxes, rather than his specific duties concerning payment of taxes. *Gustin*, 876 F.2d at 491. Courts often express this by saying: "Responsibility is a matter of status, duty and authority, not knowledge." *Id.*; *Thomsen*, 887 F.2d at 16; *George*, 819 F.2d at 1011. "Thus, a person may be a responsible person for purposes of the statute even though he may not have known that withholding taxes have not been paid." *Barnett*, 988 F.2d at 1454 (5th Cir. 1993).

■ Knowledge of nonpayment of taxes is, however, required for the "responsible person" to have "willfully" failed to collect and pay the taxes. It is this requirement that can protect him from liability. For example, in *George v. United States*, 819 F.2d 1008 (11th Cir.1987), the plaintiff was the corporation's 50% shareholder, vice-president and director. The court had no difficulty concluding he was a "responsible person." As the court saw it, the other 50% shareholder's role in managing the corporation's financial affairs "does not detract from [the plaintiff's] duty as an officer, director and shareholder to insure that the withheld taxes be paid to the government." *Id.* at 1011. On the issue of willfulness, however, the court reversed the directed verdict entered by the trial court in favor of the government, noting evidence indicating the plaintiff had no knowledge of the corporation's tax deficiency. *See also Dudley v. United States*, 428 F.2d 1196 (9th Cir.1970) (president negligent but not liable because of his lack of knowledge of nonpayment of taxes).

806

The taxpayer also prevailed on the issue of willfulness in *Levy v. United States,* 140 F.Supp. 834 (W.D.La.1956). Even though he was the corporation's president, the court freed him of personal liability because he had learned of the tax delinquency only shortly before the corporation's assets were sold at a foreclosure. The court stated:

> [T]he term "willfully" has been interpreted to mean, correctly, we think, "consciously," "intentional," "deliberately," "voluntary as distinguished from accidental." ... Here, since plaintiff did not know that the taxes in question were past due and unpaid, until shortly before the corporation failed completely, and at a time when it could not pay, he could not have "willfully" failed to collect, pay, or truthfully account for them, within the meaning of the section involved. Mere negligence, in failing to ascertain the facts, is not enough to render him liable for the penalty. 140 F.Supp. at 836.

■ The DOR would therefore harvest wheat without the chaff. In attempting to rely upon the federal "responsible person" standard, it seeks to take advantage of only the part of the standard for personal liability under the federal tax law that is favorable to the government. Courts have intentionally crafted the "responsible person" portion of the federal standard in broad terms, unconfined by the statutory language, having in mind the presence of the stricter requirement that the taxpayer must have "willfully" failed to pay the taxes. The Massachusetts statutes contain no requirement of willfulness. To adopt for Massachusetts the federal "responsible person" standard without requiring willfulness would distort the federal standard and result in unfairness here. The Debtor did not know that the taxes at issue had not been paid. He may or may not have been negligent in this regard. Negligence is not willfulness.

There is another reason not to apply the expansive "responsible person" standard fashioned by courts under the Internal Revenue Code. The standard is not true to the statutory language. The definition of "person" in the Internal Revenue Code, like the Massachusetts definition, encompasses an officer or employee "who as such officer [or]

employee ... is under a duty" to pay the tax. 26 U.S.C. § 6671(b). The federal decisions seldom refer to this rather plain language, preferring instead to employ the broader, nonstatutory phrase "responsible person." As discussed, this makes responsibility a matter of corporate status rather than corporate duty. The power to control or influence payment of taxes is deemed relevant. In doing so, the federal decisions ignore more than the concept of "duty." They also fail to recognize that the same provision encompasses both employees and officers. An employee, as such, obviously has no ability to influence or control corporate decision-making.

The federal courts make their reasoning under "responsible person" doctrine even vaguer by using a multi-factor test which looks to the presence of one or more of the following circumstances:

(i) holding of corporate office

(ii) control over financial affairs

(iii) authority to disburse corporate funds

(iv) stock ownership

(v) ability to hire and fire employees

*George v. United States,* 819 F.2d 1008, 1011 (11th Cir.1987); *Caterino v. United States,* 794 F.2d 1, 6 (1st Cir.1986); *Roth v. United States,* 779 F.2d 1567, 1571 (11th Cir.1986). These circumstances have some bearing on an individual's ability to control or influence a corporation's general decision-making. They have precious little to do with the question of who in the corporation has the specific duty to pay withholding taxes.

Moreover, the doctrine's use of some, but not necessarily all, of the factors makes its application unpredictable. For example, use of such a laundry list of factors permits affixing personal liability upon those who occupy no position of control or influence. In *Roth v. United States,* 779 F.2d 1567 (11th Cir.1986), the taxpayer was the corporation's executive vice-president in charge of financial affairs. He was neither a director nor a stockholder. The president and majority stockholder had instructed him not to pay the taxes in question. The court nevertheless held he was a "responsible person" because of his financial responsibilities and be-

cause he had "willfully" failed to pay the taxes. One judge dissented, logically observing that the instruction took away the taxpayer's authority (and hence duty) to pay the taxes. *See*, to the same effect, *Brounstein v. United States*, 979 F.2d 952 (3d Cir.1992) (president and assistant treasurer of corporation deemed a "responsible person" even though he acted at the direction of a supervisor); *Howard v. United States*, 711 F.2d 729 (5th Cir.1983) (corporate officer ruled a "responsible person" because he failed to pay withholding taxes at the direction of the CEO).

The loose standard applied to determine "responsible person" status does not always result in victory for the government. Occasionally, a court rebels against its unfairness under the particular circumstances. In *O'Connor v. United States*, 956 F.2d 48 (4th Cir.1992), the taxpayer was a vice-president and 50% stockholder. He was not, however, active in the corporation. The court reversed the entry of summary judgment for the government. It ruled the question whether he was a responsible person involved a genuine issue of material fact in light of his lack of control over payroll and his failure to participate in management. Summary judgment for the government was also reversed in *United States v. Rem*, 38 F.3d 634 (2d Cir.1994), because some of the factors were absent. The court was impressed that the taxpayer's duties were restricted to negotiations to obtain credit for the corporation, not payroll matters.

### III. COMPUTATION OF DOR CLAIM

There is also a defect in the DOR's computation of its claim. The large increase reflected in its amended claim is the result of its inclusion of taxes allegedly owed by the Piave Square Pub for the period between January of 1988 and January of 1989. But the pub was leased to Glynn's brothers in 1986. Covynn never received any of its revenues thereafter, nor was the Debtor thereafter involved in its operations. Thus, even if the Debtor came within the sweep of the Massachusetts statutes imposing personal liability for taxes, he would be liable only for the amount in the original DOR claim.

A separate order has issued disallowing the claim in its entirety.

### ORDER DISALLOWING DOR CLAIM

The Department of Revenue ("DOR") having filed an amended claim in the sum of $251,527.03, and the court having today issued an opinion disallowing the claim, it is accordingly

**ORDERED,** that the claim of the DOR be, and it hereby is, disallowed in its entirety.