Arnold W. VINICK, Plaintiff—Appellant,

v.

COMMISSIONER of INTERNAL REVENUE, Defendant—Appellee.

No. 96–1582.

United States Court of Appeals, First Circuit.

Heard Dec. 2, 1996.

Decided April 8, 1997.

Howard R. Palmer, Quincy, MA, with whom Lawrence F. O'Donnell and O'Donnell, O'Donnell & O'Donnell were on brief, for Plaintiff–Appellant.

Theresa E. McLaughlin, Assistant United States Attorney, with whom Loretta C. Argrett, Assistant Attorney General, Donald K. Stern, United States Attorney, and Sarah K. Knutson, Attorney, Tax Division, Department of Justice, were on brief, for Defendant–Appellee.

Before STAHL and LYNCH, Circuit Judges, and WOODLOCK,* District Judge.

STAHL, Circuit Judge.

Plaintiff–Appellant Arnold W. Vinick ("Vinick") appeals the grant of summary judgment in favor of Defendant–Appellee, Commissioner of Internal Revenue ("IRS") with respect to the IRS' claim for unpaid federal withholding taxes. We reverse, in part, and remand for further proceedings.

### Background

#### A. Statutory Background

By way of legal context, we begin with a brief discussion of 26 U.S.C. § 6672(a), which governs this dispute, drawing primarily from our decision in *Thomsen v. United States,* 887 F.2d 12, 14 (1st Cir.1989). The Internal Revenue Code ("the Code") requires employers to withhold federal taxes from employees' wages, *see* 26 U.S.C. §§ 3102, 3402, and to hold such amounts in trust for the United States. *See* 26 U.S.C. § 7501. Once an employer has withheld the taxes, the IRS has no recourse against the employee in the event of nonpayment. When an employer

---

* Of the District of Massachusetts, sitting by designation.

fails to remit the withheld taxes, the IRS is not without recourse, for the Code allows the IRS to look beyond the corporate form and hold certain agents and officers of the corporation personally liable for any taxes withheld but not paid. *See* 26 U.S.C. § 6672(a).

Title 26 U.S.C. § 6672(a) provides that

[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to ... pay over such tax ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Section 6672(a) thus permits the IRS to recover the full amount of delinquent withholding tax from any "responsible person," i.e., one required to collect, account for and pay over the taxes, if that individual acted willfully within the meaning of the section. *See Thomsen,* 887 F.2d at 14.

*B. Factual Background*

We state the facts in the light most favorable to Vinick, the party opposing summary judgment. *See Hoeppner v. Crotched Mountain Rehabilitation Ctr.,* 31 F.3d 9, 14 (1st Cir.1994).

Vinick is a certified public accountant and is currently a partner in his own accounting firm. He has practiced public accounting for over thirty years. Vinick became acquainted with Richard Letterman, then a practicing attorney, in the early 1970's. Around 1980 Letterman told Vinick about the Jefferson Bronze Company ("Jefferson Bronze"), a foundry in Salem, Massachusetts, and despite its less than stellar financial performance, persuaded him that it would make a good investment.

In 1981, Vinick, Letterman and Peter Mayer [1] agreed to purchase the assets of Jefferson Bronze. In the transaction, each investor acquired one-third of the company, and pledged the equity in his house as part of the financing package. Although the record is unclear as to how, Letterman became president, Vinick had the title of treasurer, and Mayer was given responsibility for the day-to-day management of the foundry.

Vinick, a busy accountant, desired only to be a passive investor in Jefferson Bronze. Despite his nominal position as treasurer, Vinick neither saw the company bylaws nor participated in any way in the fiscal or general management of Jefferson Bronze. From 1981 to 1983, Mayer oversaw the day to day operations of Jefferson Bronze, and Vinick did nothing other than prepare the quarterly tax returns.

By 1983, the company, under Mayer's stewardship, was performing poorly and losing money. That poor performance led to several changes in Jefferson Bronze's structure. Mayer "was dismissed," and Vinick asked Ronald Ouellette, a Jefferson Bronze employee, to assume oversight of the day-to-day operations of the foundry. Vinick and Letterman, in exchange for obtaining the release of Mayer's house from the financing arrangement, acquired Mayer's interest in Jefferson Bronze and each became a fifty percent owner. As part of the restructuring, Vinick and Letterman secured new financing in the amount of $300,000 which was used to pay off the original loan and for working capital, once again pledging each of their houses as collateral.

Between 1983 and 1987, Ouellette continued to run Jefferson Bronze and Vinick's involvement continued to consist, with a few exceptions, of preparing the quarterly tax returns. During 1985, Ouellette informed Vinick that Jefferson Bronze had become delinquent in its withholding taxes. Vinick informed Letterman of the problem and all three shareholders agreed to attend a meeting with a revenue officer to resolve the situation. Upon arrival, however, Letterman and Ouellette refused to attend the meeting. They waited outside in the car while Vinick alone met with the revenue agent and negotiated a payment plan. "On rare occasion" during this period, Vinick also reported Jefferson Bronze's poor performance to Letterman and sought suggestions for ways to improve the company's operations. At some point between 1983 and 1987, apparently because of the continued poor performance of

---

1. Peter Mayer is Letterman's brother-in-law.

the company, Letterman and Vinick borrowed $35,000 from the former owner. That debt was secured with personal guarantees.

In 1987, Letterman decided to assume oversight of the daily operations of the foundry. Vinick continued to prepare the quarterly tax returns. He and Letterman secured an additional $300,000 of financing, this time by pledging the assets of the company and their personal guarantees. As a condition of the loan, the lending bank required Jefferson Bronze to transfer its checking account to the bank and insisted that both Letterman and Vinick become signatories on the account. Vinick, however, never exercised his check signing authority nor did he have access to the corporate checkbook. His involvement in the management of Jefferson Bronze remained minimal.

After Letterman took over active management of the company, Vinick spoke with either Letterman or his wife (who served as bookkeeper) once every four to five weeks. On occasion he would discuss "the problem of unpaid taxes" and would urge the Lettermans to remit these taxes. Specifically, each time he prepared a quarterly tax return he discussed the withholding taxes with the Lettermans, learned whether or not the taxes had been deposited, and if not, urged the Lettermans to make the deposits. Each time he raised the issue with the Lettermans, they promised to pay the taxes, and Vinick relied on their assurances. Beginning in April 1989, Jefferson Bronze again fell behind in its withholding tax obligations.

In December 1990, the IRS made an assessment against Vinick and Letterman, each in the amount of $49,129 for unpaid withholding taxes for the last three quarters of 1989 and the first two quarters of 1990. Vinick paid one quarter's worth of the assessment, filed a claim for a refund, and upon IRS denial, brought a refund suit in district court. The IRS counterclaimed for the balance of the assessment and moved for summary judgment against both Letterman and Vinick. The district court, concluding that both Vinick and Letterman were responsible persons who acted willfully under § 6672(a), granted summary judgment for the IRS. Vinick alone now appeals.[2]

### Standard of Review

■ We review the award of summary judgment *de novo*. *See Ortiz–Pinero v. Rivera–Arroyo*, 84 F.3d 7, 11 (1st Cir.1996). Summary judgment is appropriate in the absence of a genuine issue of material fact, when the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A fact is material when it has the potential to affect the outcome of the suit. *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1250–51 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996). Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact. *See* Fed.R.Civ.P. 56(c) and (e).

■ As in other tax litigation, the person challenging an assessment under § 6672(a) bears the burden of proving that he is not a responsible person. *See Caterino v. United States*, 794 F.2d 1, 5 (1st Cir.1986). Vinick thus bears the ultimate burden of proving that § 6672(a) does not impose liability on him for Jefferson Bronze's unpaid withholding taxes. *See id.* At the summary judgment stage, however, the IRS, as the moving party, has the burden of demonstrating the absence of a genuine issue of material fact as to whether § 6672(a) applies and that it deserves judgment as a matter of law. Vinick's burden, as the party opposing summary judgment, remains the same as any opposing party: he must demonstrate that disputed facts preclude summary judgment. *See O'Connor v. United States*, 956 F.2d 48, 50 (4th Cir.1992).

### Discussion

In granting summary judgment in favor of the IRS, the district court determined both

---

2. The record reflects that in 1992, Letterman was disbarred after he pled guilty to four counts of larceny and one count of embezzlement by a fiduciary, charges all unrelated to Jefferson Bronze. He received a two-year prison sentence.

that Vinick was a responsible person and that he acted willfully as a matter of law. We consider each of these issues in turn.

## A. Responsible under § 6672(a)

As we have noted, "[c]ourts have explicitly given the word 'responsible' a broad interpretation." *Caterino*, 794 F.2d at 5. Specifically, responsibility "is a matter of status, duty, and authority," *Thomsen*, 887 F.2d at 16 (internal quotations and citations omitted), aimed at the ultimate determination of "whether the person had the power to determine whether the taxes should be remitted or paid or had 'the final word as to what bills should or should not be paid and when,'" *Caterino*, 794 F.2d at 5 (quoting *Adams v. United States*, 504 F.2d 73, 75 (7th Cir. 1974)).

We impose responsibility on "all with the responsibility and authority to avoid the default," *Harrington v. United States*, 504 F.2d 1306, 1312 (1st Cir.1974), but predicate our definition of who is a responsible person on the function of the employee in the business, and not the level of the office held, *see Caterino*, 794 F.2d at 5; *see also O'Connor*, 956 F.2d at 51 (indicating that § 6672(a) liability must derive from substance, not form). As the Second Circuit recently stated, § 6672(a) "is not meant to ensnare those who have merely technical authority or titular designation," but instead encompasses those close enough to the business to prevent the default. *United States v. Rem*, 38 F.3d 634, 642 (2d Cir.1994). At bottom, in order to be responsible, an individual must have had significant control over the financial affairs of the company. *See Caterino*, 794 F.2d at 5; *see also Rem*, 38 F.3d at 642; *United States v. Carrigan*, 31 F.3d 130, 133 (3rd Cir.1994). The individual assessed either must have exercised his authority over financial affairs or general management, or must have had a duty to do so. *See O'Connor*, 956 F.2d at 51.

In the absence of uncontroverted evidence establishing an individual's "precise responsibility" to pay withholding taxes, *see Barnett v. Internal Revenue Serv.*, 988 F.2d 1449, 1455 (5th Cir.1993), or of specific acts of management or financial decision-making that would manifest the level of control necessary for responsibility, various indicia may establish responsibility under § 6672(a). Such indicia include the holding of corporate office, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. *See Thomsen*, 887 F.2d at 16.

The IRS has offered no evidence suggesting that Vinick had the actual responsibility to pay the withholding taxes. Indeed, that was Letterman's duty. As to Vinick, the IRS established some of the recognized indicia of responsibility. During the quarters in controversy, Vinick held the office of treasurer, prepared the quarterly returns, spoke occasionally with the Lettermans about the business (including the problem of unpaid taxes), had check signing authority, and had pledged his personal assets and guarantee in order to secure company financing. *See Caterino*, 794 F.2d at 5–6 (evaluating individual's responsibility during delinquent quarters); *see also Barnett*, 988 F.2d at 1455 (same). From these indicia alone, one might infer that Vinick was a responsible person.

The record in this case, however, permits a competing inference. Vinick testified that from the outset of their venture he made it clear to Letterman and Mayer that his role was to be no more than that of a passive investor. During the relevant quarters, Vinick neither hired nor fired anyone, nor inserted himself into the company structure, initiated change or made strategic decisions. Although he technically possessed check writing authority, he never possessed the checkbook, nor did he write any checks. While Vinick did approach Ouellette to run the company when Mayer was dismissed and negotiated a settlement with the IRS in 1985 for delinquent withholding taxes, neither of those incidents occurred during the quarters in question. Letterman, in his deposition, claimed that previous managers had indicated that Vinick had more than minimal involvement in management. Letterman admitted, however, that after he

took over Vinick's involvement was minimal.[3]

In short, while the record in this case may contain sufficient evidence from which one could infer Vinick's responsibility as a matter of fact, "[t]he sufficiency of the government's evidence was not the proper test on a motion for summary judgment." *Rem,* 38 F.3d at 645. In reversing the district court on this issue we by no means absolve Vinick or in any way pass on whether he is or is not responsible under § 6672(a).[4] We simply conclude that on the basis of the evidence before us, a reasonable jury could find that Vinick was not a responsible person.

*B. Willfulness under § 6672(a)*

Assuming a jury finds Vinick a responsible person under § 6672(a), a predicate to the question of willfulness, we affirm the district court's conclusion that the undisputed facts establish that Vinick acted willfully as a matter of law.

■ Section 6672(a) contemplates a civil penalty the purpose of which is to protect governmental revenue. *See Thomsen,* 887 F.2d at 17. Willfulness under § 6672(a), therefore, does not depend on the presence of either criminal motive or the specific intent to defraud the government. *See id.* Instead, an individual who acts with a "reckless disregard" of a known or obvious risk of nonpayment acts willfully. *See id.* at 18. We have recognized three factual scenarios that meet this standard: (1) reliance upon the statements of a person in control of the finances when the circumstances show that the responsible person knew the person to be

unreliable; (2) failure to investigate or to correct mismanagement after having notice of nonpayment of withholding taxes; and (3) knowing that the business is in financial trouble and continuing to pay other creditors without making reasonable inquiry as to the status of the withholding taxes. *See id.* at 18–19 (internal quotations and citations omitted).

■ With respect to the first scenario, a responsible person acts with reckless disregard when he "had knowledge that the other individual had in the past failed to perform adequately with regard to the financial affairs of the taxpayer entity." *Id.* at 18 (internal quotation and citation omitted).

> Once a "responsible person" has had clear notice that the person to whom he has delegated responsibility for paying the taxes has wrongfully failed to pay them in the past, he continues to delegate that responsibility at his own peril. Should the "responsible person" continue to delegate, without taking appropriate measures to assure that the delegated person will not repeat the dereliction in the future, the subsequent willfulness of the delegatee in once more failing to pay the taxes will be imputed to the "responsible person."

*Id.* at 19.

The undisputed facts establish that as early as 1985 Vinick knew of Letterman's unreliability with respect to the withholding taxes. Vinick admitted that Letterman refused to accompany him to a meeting with a revenue agent after the first delinquency. Letterman

---

**3.** Vinick's situation resembles that of the plaintiff in the Fourth Circuit case *O'Connor v. United States,* 956 F.2d 48 (4th Cir.1992). In *O'Connor,* the Fourth Circuit reversed the award of summary judgment for the IRS against a corporate vice president who, like Vinick, averred that the record did not establish his responsibility as a matter of law. *See id.* at 52. The district court granted summary judgment on the basis that O'Connor demonstrated many of the indicia of a responsible person: he was a founder, fifty percent owner, officer and director of the company; he had the authority to sign checks; he had a general familiarity with the financial affairs of the company. *See O'Connor v. United States,* 1991 WL 64479, at *4 (D.Md.). In reversing, the Fourth Circuit concluded that the absence of evidence suggesting that O'Connor either exer-

cised any authority over financial affairs or general management, or was under a duty to do so, precluded the entry of summary judgment and left for trial the issue of O'Connor's actual level of involvement in the company. *Id.* at 50–52.

**4.** Unlike *Thomsen,* where we affirmed the district court's grant of a judgment as a matter of law for the IRS, this case presents a very different factual scenario. In *Thomsen,* in addition to various indicia of responsibility, we identified "concrete indications of Thomsen's actual authority." 887 F.2d at 16–17. Thomsen affirmatively made the decision to close the business and took possession of the corporate books, records and remaining inventory. *See id.* at 17.

and Ouellette waited in the car while Vinick negotiated a payment plan.

Vinick also admitted that after Letterman took over day-to-day management of Jefferson Bronze, he had discussions with either Letterman or Letterman's wife whenever he prepared a quarterly return. On those occasions, Vinick urged the Lettermans to pay the taxes and they promised they would. Vinick asserted that while he had knowledge of the unpaid taxes, his absolute lack of any control over the disbursement of funds rendered that knowledge meaningless.

While such knowledge may not bear on Vinick's § 6672(a) responsibility, should a jury find him responsible, it relates directly to a proper evaluation of whether he acted willfully. Vinick concedes that he knew of Letterman's delinquency. Yet Vinick relied on Letterman's promises of future payment without further investigation even though he realized that the delinquency continued.[5] Thus, should Vinick be found to be a responsible party, the willfulness prong has been met.

### Conclusion

We reverse the district court's determination that Vinick was a responsible person as a matter of law, but affirm the court's conclusion that Vinick acted willfully. We remand this case to the district court for further proceedings on the issue of responsibility, and note that should a jury find Vinick responsible, he acted willfully as a matter of law.

*Affirmed in part, reversed in part and remanded.*

---

5. Although Vinick made no arguments, either in his brief or at oral argument, specific to willfulness separate from responsibility, he could argue that he did not act willfully at least during the first quarter in which Jefferson Bronze went delinquent. The previous events, such as Letterman's 1985 refusal to meet with a revenue agent and Vinick's knowledge that Letterman, on occasion, subsequently failed to pay, necessarily gave Vinick the "knowledge that [Letterman] had in the past failed to perform adequately with regard to the financial affairs" of Jefferson Bronze. *Thomsen,* 887 F.2d at 18.