BOWNES, Senior Circuit Judge.
 

 The United States Bankruptcy Court for the District of Massachusetts determined that Robert P. Coveney was not personally liable for state taxes incurred by a corporation of which he served as president where the authority and responsibility for paying the taxes had been given exclusively to the treasurer. The Massachusetts Commissioner of- Revenue (the “Commissioner”) challenged that conclusion in federal district court. The district court affirmed. The Commissioner now appeals from the district court’s decision to uphold the bankruptcy court’s order. We affirm.
 

 I.
 

 On or about May 5, 1983, Coveney and his long-time friend Lawrence Glynn formed Covynn, Inc. (“Covynn”), a Massachusetts corporation, to own and operate the Piave Square Pub. Ownership of the real estate was taken in the name of Piave Realty Trust. Coveney held the title of president of the corporation, while Glynn served as the treasurer. Each of them, including their wives, held the office of director and owned one-quarter of the corporate stock. An oral agreement — the existence of which is not disputed — governed the division of labor between the officers. Glynn, who was a practicing lawyer and certified public accountant, was to be exclusively responsible for preparing and filing necessary tax returns and ensuring that taxes, mortgage, payroll, and insurance payments were timely made. Coveney, who had experience in food services, would take sole responsibility for
 
 *25
 
 the day-to-day management of the pub, including hiring and firing employees and paying the pub’s suppliers.
 

 In 1986, the corporation purchased the Oxford Restaurant. This restaurant too was operated under the same bifurcated arrangement. Eventually, Glynn and Coveney decided that the workload was too much for Coveney, and that Coveney’s duties would henceforth be limited to overseeing the Oxford Restaurant. The corporation subsequently leased the Piave Square Pub to two of Glynn’s brothers. For a few. years, the corporation prospered under the business arrangement. Then disaster struck. Glynn twice admitted to Coveney that he had fallen behind in paying state taxes owed by Cov-ynn, the first time in the spring of 1988 and the second time in early 1989. On each occasion, Coveney accepted Glynn’s suggestions for keeping the corporation afloat. In the spring of 1988, Glynn informed Coveney that Covynn owed approximately $200,000 in back taxes. On June 6, 1988, Coveney and Glynn borrowed $200,000 from Glynn’s mother to pay off the tax liability. Coveney and Glynn co-signed a note for $200,000, which was secured by a mortgage on the property of the Oxford Restaurant.
 

 Believing the crisis resolved, Coveney returned to daily management of the Oxford Restaurant. During the next several weeks, Coveney asked Glynn on several occasions whether corporate taxes were being kept current. Each time, Glynn assured Coveney that the taxes were being paid on time. Glynn changed his tune a few months later, however, acknowledging that he had again fallen behind in paying Covynn’s taxes. In March 1989, Glynn told Coveney that he paid the due taxes from an escrow account maintained for his non-Covynn legal clients, and that the money had to be immediately returned to the fund. Coveney was shocked at the new developments, but again agreed to help Glynn out of the predicament. The two borrowed an additional $210,000 from Glynn’s mother. This time, Coveney secured the loan by mortgaging his own home.
 

 By mid-1989, the business had completely unraveled. Covynn filed for bankruptcy. Creditors began to sue Covynn, naming Coveney as a eodefendant; protracted bankruptcy proceedings and related litigation commenced. In April 1994, the Commissioner informed Coveney that the Commonwealth deemed him liable for Covynn’s unpaid meals and withholding taxes from January 1, 1988 through August 31, 1989. By this time, Coveney and his wife had filed for Chapter 13 protection. Accordingly, the Commissioner filed a proof of claim against Coveney for $63,144.64 and later amended his claim upward. All told, the Commissioner sought to recover $251,527.03 in corporate back taxes from Coveney.
 

 The United States Bankruptcy Court for the District of Massachusetts disallowed the Commissioner’s claim, finding that Coveney had no “duty to pay over the taxes” under Massachusetts law because his obligations to the corporation “were confined to supervising the restaurant’s operations” and did not extend to preparing tax returns or paying taxes.
 
 In re Coveney,
 
 202 B.R. 801, 804 (Bankr.D.Mass.1996). The court found Coveney to be a victim of “a callous breach of ... trust by his business partner.”
 
 Id.
 
 at 802.
 

 The Commissioner subsequently appealed the adverse decision to the district court. The district court held that the bankruptcy court erred insofar as it refused to look to federal law on the central question of liability, but concluded that the outcome would have been the same had it done so and affirmed the judgment. This appeal ensued.
 

 II.
 

 We review the bankruptcy court’s ruling de novo, deferring to its factual findings unless they are clearly erroneous.
 
 See
 
 28 U.S.C. § 158(d). We consider the district court’s reasoning where it is persuasive, but otherwise accord no “special deference” to the court’s analysis.
 
 See Palmacci v. Umpierrez,
 
 121 F.3d 781, 785 (1st Cir.1997).
 

 Under Massachusetts law, an employer who fails to withhold or pay employee taxes is liable to the Commonwealth for those unpaid taxes. The term “employer” as used in the statute includes “an officer or employee of a corporation .., who as such officer [or] employee ... is under a duty to withhold and
 
 *26
 
 pay over taxes.” Mass. Gen. Laws ch. 62B, § 5 (1988). In like fashion, Lability for nonpayment of meals taxes may be imposed on any “officer or employee of a corporation ... who as such officer [or] employee ... is under a duty to pay over the taxes.” Mass. Gen. Laws ch. 64H, § 16 (1988).
 

 The Commissioner has promulgated regulations defining “a duty to pay over” as
 

 an obligation to remit taxes that arises from a person’s position, function, or responsibility undertaken on behalf of a corporation or partnership. Such obligation need not be a legally enforceable agreement between the corporation or partnership and the responsible person.
 

 Mass. Regs.Code tit. 830, § 62C.31A.1(2) (1998). Whether a duty to pay exists must be determined “based on the facts and circumstances of the individual case.” Mass. Regs.Code tit. 830, § 62C.31A.1(4). As the bankruptcy court correctly observed, under the governing statute and regulations, the mere fact of holding corporate office, standing alone, is insufficient to create a duty to pay.
 

 There is no comprehensive or uniform set of factors that must be evaluated in deciding if an individual has a personal duty to pay corporate taxes. In
 
 Commissioner v.
 
 Brown, 424 Mass. 42, 673 N.E.2d 1225 (Mass.1997), the Supreme Judicial Court recognized the absence of any “list[ ][of] factors” bearing on the question of duty and analyzed the facts before it in light of the federal law’s focus on whether the assessed individual “had the authority to have the taxes paid.” 673 N.E.2d at 1227. Based on the court’s consideration of federal law, the Commissioner contends that the Supreme Judicial Court has fully embraced the federal approach in interpreting state tax laws. Relying on
 
 Broum,
 
 the Commissioner seeks the benefit of the federal “responsible person” test, which broadly extends tax liability under the Internal Revenue Code to “all with the responsibility and authority to avoid the default” who wilfully fail to pay.
 
 Vinick v. Commissioner,
 
 110 F.3d 168, 172 (1st Cir.1997).
 

 Although the court in
 
 Brown
 
 sought guidance from federal law in interpreting Chapter 62B, section 5 and Chapter 64H, section 16, we must be wary of reading too much into the court’s decision to look to federal cases for the following reasons. The court did not explicitly adopt the federal “responsible person” standard. Nor did it say that the phrase “duty to pay over” under state law ought to be read as expansively as many federal courts — including this Circuit — have construed the “responsible person” test. Rather, it observed only that “there is a close parallel between the State and Federal statutes concerning the duty to pay over.”
 
 Brown,
 
 673 N.E.2d at 1227. While federal courts often construe the “responsible person” standard quite broadly, treating it as merely a threshold inquiry, Massachusetts courts interpreting their own laws have placed a greater emphasis on whether the individual at issue was responsible for paying the taxes. Indeed, the
 
 Brown
 
 court considered not only whether the assessed individual had the authority to pay over the taxes, but also whether it was his responsibility either to remit the taxes or to supervise payment of the taxes.
 
 See id.
 

 Further, the usefulness of federal cases may be somewhat complicated by the fact that the federal approach requires an additional showing of “wilfulness,” which is not required by Massachusetts law. The Supreme Judicial Court has not had occasion to explore this difference in detail.
 

 For these reasons, we do not read
 
 Brown
 
 to adopt federal law wholesale so as to render synonymous the two standards. Instead, we look to federal cases only for secondary persuasive authority.
 
 [1]
 
 But we must focus on Massachusetts precedent, following its lead as to how to apply the “duty to pay over” standard.
 

 In practice, Massachusetts courts have not set forth a single set of factors to be applied
 
 *27
 
 in all cases, but instead have conducted a case-by-case inquiry, weighing a variety of circumstances, including the formal governing framework within the corporation, whether the alleged debtor bore explicit responsibility for paying the taxes, the degree to which the individual actually exercised control over the corporation’s financial affairs, and whether the assessed individual knew of the tax default.
 
 See, e.g., Berenson v. Commissioner,
 
 413 Mass. 831, 604 N.E.2d 704, 705 (Mass.1992) (assessed individual was president, treasurer, and “the person responsible for paying sales taxes”);
 
 Fox v. Commissioner,
 
 No. 194544, slip op. 688, 700, 1998 WL 391429 (Mass.App. Tax Bd. June 30, 1998) (imposing personal liability on individual serving as president and treasurer who exerted control over which creditors to pay, regularly discussed the companies’ sales tax liabilities, and “was informed of the companies’ cash needs on a daily basis”);
 
 cf. Godfrey v. United States,
 
 748 F.2d 1568 (Fed.Cir.1984) (chairman of board not responsible person under federal law in absence of evidence that he “had or exercised control of the collection, accounting for, and payment over of taxes”).
 

 The recent case of
 
 Commissioner v. Brown,
 
 424 Mass. 42, 673 N.E.2d 1225, provides the best guidance. In
 
 Brown,
 
 the Commissioner sought to hold the treasurer of a corporation accountable for the corporation’s unpaid sales taxes. The Commonwealth’s Appellate Tax Board rebuffed the Commissioner’s efforts, ruling that Brown was under no duty to pay over the sales taxes. On appeal, the Supreme Judicial Court agreed that Brown was not personally liable for the taxes. Acknowledging that Brown was the corporation’s treasurer and had check-signing authority, the court nevertheless found dispositive that “it was not his job to pay over the taxes,” that he did not, in fact, have supervisory responsibility for payment of the taxes, and that he “had no decision-making authority over the disbursement of the funds.” 673 N.E.2d at 1227.
 

 The reasoning of
 
 Brown
 
 compels a similar finding of no liability in this case. Here, a binding agreement between the two officers of the corporation (albeit an oral one) imposed the exclusive duty to pay the corpo-ration’s taxes on Glynn, not Coveney. The existence of such an explicit arrangement distinguishes this case from the typical case where a duty to pay over must be inferred from often conflicting circumstances and in the absence of a clear delineation of corporate responsibilities.
 
 See id.
 
 at 1227 (“The answer would be easily arrived at ... if an individual had been given express authority to pay over taxes as part of his or her regular activities.”). The officers’ oral agreement here not only placed the tax-paying responsibility squarely upon Glynn’s shoulders, but by implication, withdrew the same authority and responsibility from Coveney. “The separation of authority within a business enterprise, and the limitation on authority held by officers is a practical reality which is acknowledged and given effect by the courts.”
 
 O’Connor v. United States,
 
 956 F.2d 48, 51 (4th Cir.1992);
 
 see also Godfrey,
 
 748 F.2d at 1576 (“The courts recognize the normal division of and limitations on authority exercised by various representatives of a particular business.”);
 
 Bauer v. United States,
 
 211 Ct.Cl. 276, 543 F.2d 142, 149 (Ct.Cl.1976) (same).
 

 The actual practice of the officers .confirms this division of labor. Each person’s corporate duties were strictly confined to his area of expertise: Coveney to food service and restaurant management and Glynn to meeting the corporation’s general legal and financial obligations. Consistent with the governing arrangement, Coveney never prepared or filed a tax return nor did he sign a single tax check. Like the corporate officer in
 
 Brown,
 
 Coveney had general cheek-signing authority, but never once actually exercised that power in connection with or intruded in any way upon Glynn’s exclusive tasks of paying the corporation’s mortgage, tax, and payroll liabilities.
 
 See O’Connor,
 
 956 F.2d at 51 (“Most corporate officers probably do have the authority to make disbursements.... The focus must instead be on substance rather than form.”). Moreover, the two officers did not routinely discuss the corporation’s tax liability. Coveney was kept in the dark about the corporation’s dire financial straits until disaster loomed.
 
 See Fox,
 
 slip op. at 700, 1998 WL 391429. Virtually all of the relevant tax, payroll, mortgage, and insur-
 
 *28
 
 anee records were maintained by Glynn off-site. These circumstances amply support the bankruptcy court’s determination that Cove-ney had no duty to pay over the taxes.
 

 We would reach the same conclusion even if we were to rely more heavily on federal case law. The Commissioner cites various federal cases for the proposition that a responsible person may not delegate the duty to pay taxes to another.
 
 See, e.g., Keller v. United States,
 
 46 F.3d 851, 854 (8th Cir.1995). That principle, however, assumes a preexisting duty to pay. We find no such obligation here. The cases cited by the Commissioner, moreover, involved corporate officers who possessed “significant” or “ultimate” control over the corporate finances such that the person “can fairly be said to be responsible for the corporation’s failure to pay over its taxes.”
 
 Kinnie v. United States,
 
 994 F.2d 279, 283 (6th Cir.1993). By contrast, Coveney’s authority over financial affairs was strictly limited to paying suppliers. Despite his title as president, he owned no more stock than any of the other directors; he did not reserve power over other corporate matters; and he never expanded his discrete authority by involving himself more deeply in the corporation’s legal and financial obligations. Coveney did not have final authority over the corporation’s finances or sufficient responsibility for paying taxes such that he “can fairly be said” to have “had the authority to have the taxes paid.”
 
 Brown,
 
 673 N.E.2d at 1227.
 

 The Commissioner, turning to what he believes to be his ace-in-the-hole, urges us to draw an adverse inference from Coveney’s willingness to twice remedy the corporation’s tax deficit — if we were to accept the Commissioner’s version of the facts, Coveney’s actions would show that he had taken on an individual duty to pay the corporation’s taxes. Neither the bankruptcy court nor the district court saw fit to draw such a conclusion, however, and we see no error in their refusal to make such an inferential leap. To us, Coveney’s decision to place his personal finances at greater risk reveals nothing more than his natural desire to maintain the financial viability of the corporation of which he was a co-founder. He was not fulfilling Glynn’s corporate functions or undertaking new ones.
 

 We believe the bankruptcy court correctly held that Coveney had no individual duty under state law to pay corporate withholding and meals taxes to the Commonwealth.
 

 Affirmed. Costs on appeal awarded to ap-pellee.
 

 [1]
 

 . In deciding whether an assessed individual is a "responsible person” under 26 U.S.C. § 6672(a)(1998), federal courts typically consider various indicia of responsibility, such as the holding of corporate office, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees.
 
 See Vinick,
 
 110 F.3d at 172.